**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT A. DOLLINGER**

                                 **Plaintiff,**

     **vs.**                                        **3:14-CV-00908**
                                                    **(MAD/DEP)**

**NEW YORK STATE INSURANCE FUND,**

                                 **Defendant.**
_____

**APPEARANCES:**                   **OF COUNSEL:**

**ROBERT A. DOLLINGER**
84 State Line Road
Vestal, New York 13850
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK**         **JOSHUA L. FARRELL, ESQ.**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     *Pro se* plaintiff, Robert Dollinger, brought this action against his employer, New York

State Insurance Fund ("NYSIF"), alleging discrimination, retaliation, and hostile work

environment based on his disability in violation of Title VII of the Civil Rights Act of 1964

("Title VII") and the Americans with Disabilities Act ("ADA"). *See* Dkt. No. 1. Defendant filed

a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt.

No. 5-1. Plaintiff responded, filed a cross-motion to amend his complaint, and submitted a

proposed amended complaint in support of his motion. *See* Dkt. No. 8-1. In the amended

complaint, Plaintiff alleges discrimination, retaliation, and hostile work environment based on his sex and disability. *See* Dkt. No. 8-1 at 2. Currently before the Court is Defendant's motion to dismiss Plaintiff's original complaint for failure to state a claim, as well as Plaintiff's motion to amend the complaint.

## II. BACKGROUND

**A.     Plaintiff's Original Complaint**

Plaintiff commenced this action on July 23, 2014, alleging discrimination based on his disability, through Defendant's failure to promote him, unequal terms and conditions of employment, and retaliation. *See* Dkt. No. 1. Plaintiff alleges that he is being discriminated against because "[Plaintiff belongs] to a group associated with high risk for HIV/AIDS, homosexual men living with HIV/AIDS." *See* Dkt. No. 1 at 3. Further, Plaintiff contends that he has been "subjected to unwanted comments, received adverse personnel actions, and [has] been subjected to this hostile . . . work environment because of [his] disability." *See id.* In regards to retaliation, Plaintiff alleges that he was retaliated against for his participation in a 2012 New York State Division of Human Rights proceeding in which a Sex Discrimination Complaint was maliciously filed against Plaintiff. *See id.* During a review for promotion, "elements of [Plaintiff's] personal life were disseminated in the workplace," and a "tyrannical atmosphere has been established" as a result of Defendant's actions. *See id.* Plaintiff concludes that Defendant has willfully acted in violation of Title VII and the ADA. *See id.*

Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") regarding the alleged discriminatory acts on June 7, 2014. *See id.* at 4. The EEOC issued a Notice-of-Right-to-Sue letter on June 25, 2014. *See id.* The letter issued by the EEOC declared "[b]ased on its investigation, the EEOC is unable to conclude that the information obtained

establishes violation of the statutes . . . No finding is made as to any other issues that might be construed as having been raised by this charge." *See id.* at 6.

**B.      Defendant's 12(b)(6) Motion to Dismiss**

On August 13, 2014, Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that "Plaintiff's complaint states no facts to establish a plausible [Title VII] or [ADA] claim." *See* Dkt. No. 5-1 at 3.  Defendant argues that Plaintiff failed to establish a retaliation claim under the ADA and Title VII because he alleges no facts necessary to meet any of the elements of a retaliation claim.  *See* Dkt. No. 5-1 at 5-6.  Further, Defendant argues that Plaintiff's discrimination claim under Title VII must fail because sexual orientation is not a protected class under Title VII, and Plaintiff's claim under the ADA must fail mainly because Plaintiff has not alleged an adverse employment action.  *See* Dkt. No. 5-1 at 6-8. Finally, Defendant argues that Plaintiff's hostile work environment claim must be dismissed because his allegations are "wholly conclusory."  *See* Dkt. No. 5-1 at 9.

**C.      Plaintiff's Amended Complaint**

On September 19, 2014, Plaintiff filed an amended complaint, in which he alleged discrimination based on his sex and disability, through Defendant's failure to promote, unequal terms and conditions of employment, and retaliation.  *See* Dkt. No. 8-1 at 2.  The amended complaint alleges significantly more facts to support Plaintiff's allegations.

First, Plaintiff alleges that since 2010, co-workers have been disciplined for sending emails that contain sexual content, profanity, and nudity.  *See* Dkt. No. 8-1 at ¶ 3.  Plaintiff has frequently been the target of such improper computer use; for example, Plaintiff has received unwanted emails of partially and fully nude men.  *See id.* at ¶ 6.  More specifically, Plaintiff

received an email portraying a male figure engaging in unsafe sex with a line drawn through it, containing the text, "NO AIDS," as well as another email depicting a man dressed like a woman containing the text, "Gay terrorist." *Id*. at ¶ 5. One day while working with a female co-worker, Plaintiff opened an email "that immediately revealed a nude male graphic and began playing related audio." *Id.* at ¶ 7. Plaintiff says that these emails make him feel "violated, degraded, humiliated, unaccepted, and fearful in [his] workplace." *Id.* Plaintiff also alleges that he has had unfounded and malicious workplace violence and other complaints filed against him, and that NYSIF is aware of the frivolous filing of complaints. *See id.* at ¶¶ 18-19. According to Plaintiff, since 2011, NYSIF has held meetings with the entire staff to address the misuse of internal complaints. *See id*. at ¶ 21. Finally, on August 28, 2014, a harassing letter was mailed to Plaintiff's home, and Plaintiff continues to experience hostility and intimidation from current supervisors. *See id*. at ¶¶ 2, 45.

In response to what Plaintiff describes as a "discriminatory hostile atmosphere," *id*. at ¶ 1, Plaintiff has participated in internal NYSIF sex discrimination interviews and New York State Division of Human Rights ("DHR") investigations. *See id*. at ¶ 48. Plaintiff has reported the unsolicited derogatory emails to the Affirmative Action Office at NYSIF. *See id.* at ¶ 9. Plaintiff has also participated in NYSIF interviews involving disability and sexual harassment complaints that were filed against NYSIF and "the then female Business Manager." *Id.* Plaintiff contends that the "female Business Manager" was discriminated against because of her sex. *See id.* at ¶¶ 12-18. Plaintiff alleges that, because he defended the female Business Manager, co-workers retaliated by filing unfounded workplace violence and other complaints against him. *Id.* at ¶ 18. For example, on March 16, 2012, a Human Rights Sex Discrimination Complaint named Plaintiff as aider and abettor to NYSIF, alleging that Plaintiff was photographing females in the women's

bathroom to share with male co-workers. *See id.* at ¶¶ 3, 9, 18. Again Plaintiff alleges that

NYSIF is aware of the frivolous manipulation of internal complaints because the NYSIF

Affirmative Action intake procedures have been revised to include a disciplinary warning to those

who misuse the complaints; NYSIF has not, however, enforced the policy, and instead allows the

conduct to continue. *See id.* at ¶ 26.

Plaintiff alleges that he is being discriminated against because of his perceived disability,

as well as being subjected to "sexual harassment including gender stereotyping." *Id.* at ¶ 48. In

support of his sex discrimination claim, Plaintiff alleges that male co-workers often mock him for

being "overly sensitive" and "too emotional." *Id*. at ¶ 32. Also, a male co-worker has entered

Plaintiff's work area "wearing camouflage and hunting gear and talk[s] about guns and gutting

animals in the woods." *See id*. at ¶ 33. In addition, the new female Policy Holder Service

("PHS") manager talks about putting subordinates on meat hooks and tells male co-workers to

"cowboy up." *Id.* at ¶ 34. Plaintiff believes these comments are made "to portray [Plaintiff] as

lacking perceived needed stereotypical male 'aggression' and . . . [instead as] possessing perceived

negative stereotypical feminine attributes . . . therefore [making him] not capable of the PHS

manager title." *Id*.

Finally, Plaintiff alleges that Defendant failed to promote him to the position of PHS

manager, despite the fact that he is qualified for the position; Plaintiff has worked in the PHS

Department for 28 years as an Auditor, an Audit Supervisor, and a Team Leader. *See id*. at ¶ 39.

Plaintiff contends that similarly situated co-workers have been promoted to the PHS Manager

position. *See id.* In May 2013, NYSIF posted a vacancy notice for a PHS Manager position in

the Binghamton District Office, and Plaintiff applied for the position. *See id.* at ¶¶ 35-36.

Plaintiff alleges that he did not receive the promotion because a male co-worker sent an email to

the NYSIF Executive Director including allegations that Plaintiff photographed women at work, Plaintiff threw a hot cup of coffee at his nephew, and Plaintiff was feared because "[i]t is evident that [Plaintiff's] domestic violence has spilled over into the workplace." *See id*. at ¶ 36. Plaintiff, however, insists that his domestic partner was the one who threw the hot coffee at his runaway nephew, and that the peace officer mistakenly wrote Plaintiff's name instead. *See id.* at ¶ 37. In July 2013, another vacancy notice for the PHS Manager Position was posted; Plaintiff applied but was never interviewed. *See id*. at ¶ 40. In August 2013, a co-worked informed Plaintiff that family court documents, and the police report regarding the domestic dispute involving Plaintiff's nephew, were made available to the entire PHS staff through the Outlook Email System. *See id.* at ¶ 41. Plaintiff concludes that he was "deselected for a promotion" because of his sex and disability. *See* Dkt. No. 8-1 at pg. 3-4.

### III. DISCUSSION

**A.    Standard of Review**

Rule 15 of the Federal Rules of Civil Procedure addresses amended complaints: "A party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(2). In general, a court should not dismiss a *pro se* litigant's complaint without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quotations and citation omitted). Although "it is within the court's discretion to deny leave to amend . . . when leave is requested informally in a brief filed in a motion to dismiss," *In Re Ramoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006), "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir.

2000) (quotations and citation omitted). As discussed above, Plaintiff's amended complaint alleges considerably more facts than his original complaint, and therefore, Plaintiff's amended complaint is accepted. Because Defendant has responded to the proposed amended complaint, "the merits of the motion will be considered in light of the proposed amended complaint." *Claes v. Boyce Thompson Inst. for Plant Research*, No. 5:14-CV-774, 2015 WL 831949, *3 (N.D.N.Y. Feb. 27, 2015). "If the proposed amended complaint cannot survive the motion to dismiss, then [P]laintiff's cross-motion to amend will be denied as futile." *Id.* (*citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

A motion to dismiss for failure to state a claim tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark,* 508 F.3d 106, 111-12 (2d Cir. 2007) (citations omitted). In considering a Rule 12(b)(6) motion to dismiss, a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement for relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quotation and citation omitted). Drawing inferences in the plaintiff's favor does not, however, extend to bare legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice") (citation omitted). Ultimately, a court should only grant a Rule 12(b)(6) motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of the complaint which would entitle him to relief." *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (citation omitted).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F.Supp.2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)) (other citations

omitted).  *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").

**B.      Discrimination**

*1. Title VII Sex Discrimination*

Title VII of the 1964 Civil Rights Act makes it unlawful for an employer to: "discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  In order to establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [there was] an adverse employment action; and (4) the circumstances give rise to an inference of discrimination."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citation omitted).  As stated in the statute, protected classes include race, color, religion, sex, and national origin.  42 U.S.C. § 2000e-2(a)(1).  An adverse employment action includes any "materially adverse change in the terms, privileges, duration, and conditions of employment."  *Treglia v. Town of Manlius*, 313 F.3d 717, 720 (2d Cir. 2002).

"Title VII does not, by its express terms, prohibit all arbitrary employment practices. Rather, it is directed only at specific impermissible bases of discrimination such as race, color, religion, sex, or national origin."  *Dollinger v. State Ins. Fund.*, F.Supp.2d 467, 475 (N.Y.N.D. 1999).  Because "sexual orientation is not included in the statutory protected class," *Kiley v. American Soc. for Prevention of Cruelty to Animals*, 296 Fed. Appx. 107, 109  (2d Cir. 2008), Plaintiff attempts to proceed under a gender stereotyping theory of sex discrimination.  *See also Simonton v. Runyon*, 232 F.3d 33 (2d Cir. 2000) ("The law is well-settled in this circuit . . . that

[the plaintiff] has no cause of action . . . because Title VII does not prohibit harassment or discrimination because of sexual orientation").  Although it is uncommon, courts have recognized the potential for a Title VII sex discrimination claim when the plaintiff has suffered an adverse employment action due to impermissible gender stereotyping by the employer.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (female employee denied promotion to partner in an accounting firm because of employer's negative perception of her "masculine" qualities, such as her aggressiveness and use of profanity).  However, the Second Circuit has made it clear that a plaintiff may not utilize a gender stereotyping claim in an effort to "bootstrap protection for sexual orientation into Title VII."  *Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2d Cir. 2005) (citing *Simonton v. Runyon*, 232 F.3d 33, 38 (2d Cir. 2000)).

Under the gender stereotyping theory of Title VII liability, "individuals who fail or refuse to comply with socially accepted gender roles are members of a protected class."  *Dawson*, 398 F.3d at 218.  The gender stereotyping theory is grounded in the premise that "Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes."  *Price*, 490 U.S. at 251.  The Second Circuit has drawn a strict distinction between discrimination based on sexual orientation and discrimination based on failure to comply with traditional gender roles.  For instance, in *Simonton v. Runyon*, the Second Circuit related the facts of the plaintiff's case "to identify the precise nature of the abuse so as to distinguish this case from future cases as they arise."  *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000).  The harassment that the plaintiff in *Simonton* endured included the following: notes containing the plaintiff's name and celebrities who had died of AIDS, pornographic photographs in the plaintiff's work area, male dolls in his vehicle, and copies of Playgirl magazine sent to his home.  *Id.*  Despite the moral repugnancy of the harassment, the Second Circuit concluded that there is "[no basis in the record

to surmise that] the harassment he endured was, in fact, based on his non-conformity with gender norms instead of his sexual orientation." *Id.* at 38; *see also Martin v. New York State Dept. of Correctional Services*, 224 F. Supp. 2d 434 (N.D.N.Y. 2002). Therefore, "in order to avoid bootstrapping sexual orientation claims under Title VII, a plaintiff must demonstrate that he does not, or at the very least is not perceived to, act masculine." *Martin*, 224 F. Supp. 2d at 446.

Like the plaintiffs in *Martin* and *Simonton*, the basis of Plaintiff's claim for relief is largely based on discriminatory conduct directed toward Plaintiff's *sexual orientation*, and not his failure to conform to traditional masculine stereotypes. The few instances of potential sex discrimination that Plaintiff alleges in the amended complaint are far too minor to permit the inference that sex discrimination played a role in Defendant's failure to promote Plaintiff. The mere presence of a male co-worker in Plaintiff's workspace "wearing camouflage . . . and talk[ing] about guns and gutting animals in the woods," combined with trivial comments about Plaintiff being "too sensitive," does not allow for the inference that Plaintiff's failure to conform to masculine stereotypes is the true rationale for Defendant's denial of his promotion. *See* Dkt. No 8-1 at ¶¶ 32-34. On the contrary, Plaintiff alleges that the male co-worker told other co-workers that he was "fearful of [Plaintiff]," which is inconsistent with the perception Plaintiff has alleged others have of him. *See id.* at ¶ 43. Finally, Plaintiff alleges that the main reason why he was not promoted was allegedly the result of Defendants obtaining access to a Family Court case and police report that involved Plaintiff, his domestic partner, and his runaway nephew. *See* Dkt. No. 8-1 at ¶ 37. There is no possible way that the Court can construe Plaintiff's amended complaint so as to infer that Defendant's access to this information, albeit personal information, caused Defendant to impermissibly perceive Plaintiff as failing to conform to "socially accepted gender roles." Therefore, Plaintiff's Title VII discrimination claim is dismissed.

*2. ADA Discrimination*

The ADA prohibits "discrimination against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (citing *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)).

Under the ADA, "disability" is defined as follows: (a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such impairment; or, (c) being regarded as having such an impairment. *See* 42. U.S.C. § 12102(1). An individual meets the third, "regarded as," category if "the individual establishes that he . . . has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). "A 'regarded as' claim turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability." *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005) (internal citations and quotations omitted). The Second Circuit explained in *City of Meriden* that

> [a] plaintiff cannot state a claim under the "regarded as" prong of
> the ADA . . . simply by alleging that the employer believes some
> physical condition renders the plaintiff disabled. Rather, the
> plaintiff must allege that the employer believed, however
> erroneously, that the plaintiff suffered from an "impairment" that, if

11

> it truly existed, would be covered under the statute and that the
> employer discriminated against the plaintiff on that basis.

*Francis v. City of Meriden*, 129 F.3d 281, 285 (2d Cir. 1997). Plaintiff is proceeding under the "regarded as" category of a disability. *See* Dkt. No. 8-1 at ¶ 4 ("[Plaintiff is] regarded as belonging to a group associated with high risk for HIV/AIDS; homosexual men living with HIV/AIDS").

"An individual who can show that an employer made an employment decision because of a perception of a disability based on myth, fear, or stereotype, will satisfy the regarded as part of the definition of disability." *Dollinger v. State Ins. Fund*, 44 F. Supp. 2d 467, 479 (N.D.N.Y. 1999) (emphasis added) (internal quotations and citation omitted). A "disability" includes HIV positive status. *See Bragdon v. Abbot*, 524 U.S. 624 (1998); *see also Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998) (confirming the Second Circuit's conclusion that HIV positive status constitutes a disability). Plaintiff's allegations are sufficient to establish that Defendant knew of, or at least perceived, Plaintiff's HIV/AIDS status based on the complaints Plaintiff made both internally and with the EEOC. Plaintiff complained about offensive emails that literally demonstrated such a perception, and in response to the emails, NYSIF held meetings with the entire staff to address the issue. *See* Dkt. No. 8-1 at ¶¶ 5, 21. For these reasons, the Court finds that Plaintiff has plausibly alleged that Defendant regarded him as having a disability.

Although Defendant contests all elements of Plaintiff's ADA discrimination claim, Plaintiff's *pro se* amended complaint must be construed liberally at this early stage in the proceedings. First, NYSIF meets the statutory definition of an employer. *See* 42 U.S.C. § 12111(5)(A). Second, as discussed, Plaintiff has plausibly alleged that he meets the "regarded as" definition of a disability – *i.e.* Plaintiff is regarded as being HIV positive – regardless of whether or not Plaintiff is HIV positive. As mentioned above, HIV positive status constitutes a disability.

Third, the fact that Plaintiff has worked at NYSIF for twenty-eight years and has been promoted several times supports Plaintiff's conclusion that he is qualified to perform the essential functions of the job. *See* Dkt. No. 8-1 at ¶ 39.

Plaintiff's ADA discrimination claim fails, however, on the fourth element of the claim – *i.e.* that Plaintiff suffered adverse employment action *because of* his disability. As described under the Title VII analysis, Plaintiff alleges that an email including "false negative information relating to [Plaintiff's] personal life" is the reason why Plaintiff was not selected for the promotion. *See* Dkt. No. 8-1 at ¶ 36. Again, the email contained a police report that stated that Plaintiff threw a cup of hot coffee on his runaway nephew. *Id.* Plaintiff claims that his domestic partner was actually the one who threw the coffee and that "[Plaintiff's] partner has never entered the NYSIF workplace." *Id.* at ¶ 37. Therefore, as far as Defendant knows, Plaintiff was involved in a domestic dispute with his minor nephew, and Plaintiff's partner was not present. These facts do not support the conclusion that Plaintiff was not promoted because Defendant "regarded Plaintiff" as having HIV/AIDS. In other words, Plaintiff's perceived disability was not plausibly at issue during the selection process for PHS Manager. In fact, the co-worker also cited NYSIF's domestic violence policy in the email, and violating the policy is a legitimate reason for denying Plaintiff the promotion. Since the personal information about Plaintiff that was disseminated throughout NYSIF made no reference to Plaintiff's actual or perceived disability, Defendant's motion to dismiss Plaintiff's ADA Discrimination claim is granted.

## C.     Retaliation

### 1. Title VII

Title VII makes it unlawful for "an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this

subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3.  To state a *prima facie* case of retaliation under Title VII, a plaintiff must plausibly allege the following:

> (1) that he engaged in protected participation or opposition under Title VII . . . , (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.,* that a retaliatory motive played a part in the adverse employment action.

*Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (quotation and other citations omitted).  In other words, "the essence of a retaliation claim is that the employer took adverse employment action against an employee motivated in part because the employee engaged in protected activity by opposing an unlawful practice."  *Robinson v. Purcell Const. Corp.*, 859 F. Supp. 2d 245, 261 (N.D.N.Y. 2012).  The Supreme Court has held that "the scope of Title VII's anti-retaliation provision is broader than that of its discriminatory action provision . . . any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination could constitute retaliation."  *Patane v. Clark,* 508 F.3d 106, 116 (2d Cir. 2007) (internal quotations and citation omitted).

    In his amended complaint, Plaintiff alleges that he participated in "internal NYSIF sex discrimination complaints" and "NYS Division of Human Rights Investigations," on his own behalf.  *See* Dkt. No. 8-1 at ¶ 8.  Although this Court has found that Plaintiff was not subjected to sex discrimination, it is irrelevant whether the complained of conduct actually violated the law "'so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of employer violated the law.'"  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (quotation and citation omitted).  "The reasonableness of the plaintiff's belief is to

be assessed in light of the totality of the circumstances." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (citation omitted).

In this case, when the totality of the circumstances are taken into consideration, the discriminatory conduct was clearly directed at Plaintiff's sexual orientation, not Plaintiff's sex or his failure to conform to masculine stereotypes. *See* Dkt. No. 8-1 at ¶¶ 5-7 (discussing offensive emails which targeted Plaintiff's sexual orientation). Therefore, it was not objectively reasonable for Plaintiff believe that he was opposing instances of sex discrimination. Plaintiff also repeatedly refers to his involvement in a Division of Human Rights Sex Discrimination Complaint that named Plaintiff as aider and abettor to NYSIF. *See* Dkt. No. 8-1 at ¶ 11. This Sex Discrimination Complaint filed against Plaintiff does not qualify for purposes Title VII's retaliation prohibition; Plaintiff was alleged to have violated the law, so it cannot logically follow that he was engaged in protected participation or opposition. Rather, he was defending himself against allegations that he engaged in prohibited conduct.

In *Thompson*, the Supreme Court held that the plaintiff had stated a claim for Title VII retaliation when he was fired (an adverse employment action) after his fiancée filed a sex discrimination (protected activity) charge against their employer. *See Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011). Plaintiff attempts to state a retaliation claim under third-party opposition to sex discrimination, in saying that he participated in "NYSIF interviews involv[ing] disability complaints and sexual harassment complaints levied *against . . .* the then female Business Manager." *See* Dkt. No. 8-1 at ¶ 9. Plaintiff thoroughly recounts instances of sex discrimination perpetrated against the female Business Manager, and then states that he participated in internal investigations on her behalf. *See id.* at ¶¶ 12-18. In order to successfully state a claim under *Thompson*, however, Plaintiff must allege that the female Business Manager

engaged in a protected activity under Title VII, and that Plaintiff suffered an adverse employment action as a result.

A "protected activity" includes any "action taken *to protest or oppose* statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (emphasis added). Plaintiff's attempt at using a third-party retaliation claim arising out of internal investigations that he participated in on the female Business Manager's behalf when internal complaints were filed *against her*, does not constitute protected activity. For example, Plaintiff participated in a sexual harassment complaint investigation levied against the female Business Manager, which involved an incident "where she had used the word testosterone in room full of males." *See id.* at ¶13. In another instance, a female fieldworker filed a Workplace Violence Complaint against the female Business Manager because "she felt intimidated when [the Business Manager] called her directly as opposed to going through the field employee's male supervisor." *See id.* at ¶ 14. Although Plaintiff's amended complaint is riddled with examples of allegedly unfounded complaints being filed against the female Business Manager, he never alleges that she opposed this discriminatory conduct formally through internal or external channels, such as the EEOC. Therefore, because it was not objectively reasonable for Plaintiff to believe he was opposing sex discrimination on his own behalf, and because Plaintiff fails to state a third-party retaliation claim on the female Business Manager's behalf, Plaintiff's Title VII retaliation claim is dismissed.

### 2. ADA

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act of practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A retaliation case under the ADA requires "a showing that the employee was engaged in an activity protected by the ADA." *Gold v. Carus*, 131 Fed. Appx. 748, 750 (2d Cir. 2005) (quotations and citation omitted). ADA retaliation claims are analyzed under the same framework as Title VII retaliation claims. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) ("[The Second Circuit] conclude[s] that it is appropriate to apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA").

"[The ADA's] anti-retaliation provision must be construed to cover a broad range of employer conduct." *Thompson v. North American Stainless, LP*, 562 U.S. 170, 173 (2011) (citation omitted). Keeping that premise in mind, the Second Circuit has held that "retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second element of the retaliation prima facie case." *Martin v. New York State Dep't of Corr. Servs.*, 224 F. Supp. 2d 434, 448 (N.D.N.Y. 2002) (citing *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)). In determining whether the co-worker harassment is "sufficiently severe," the court should consider whether the plaintiff has "endure[d] a materially adverse change in the terms and conditions of employment." *Martin*, 224 F. Supp. 2d at 448 (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)) (citation omitted). Further, "material adversity is to be determined objectively, based on the reactions of the reasonable employee." *Rivera v. Rochester Genesse Regional Transp. Authority*, 743 F.3d 11, 25 (2d Cir. 2012).

Construing Plaintiff's amended complaint liberally, as is required on a Rule 12(b)(6) motion to dismiss, Plaintiff has alleged sufficient facts to state a retaliation claim under the ADA. Plaintiff alleges that he has participated in protected activity under the ADA, including NYSIF

interviews "regarding discriminatory behavior with respect to [Plaintiff's] disability." *See* Dkt. No. 8-1 at ¶ 9.  Plaintiff has produced sufficient evidence to allege that his co-worker's retaliatory harassment – *i.e.* the repeated filing of malicious and unfounded complaints against him – reaches the level of an adverse employment action, especially because Defendant has failed to enforce procedures designed to prevent the conduct from occurring.  *See Martin v. New York State Dept. of Correctional Servs.*, 224 F. Supp. 2d 434, 449 (N.D.N.Y. 2002) (holding that other employees handcuffing the plaintiff to the arsenal window is sufficiently severe to constitute materially adverse employment action); *see also Richardson,* 180 F.3d at 446-47 (finding that sufficiently severe co-worker retaliatory harassment included manure in the plaintiff's parking space, hair in her food, a rubber band shot at her, and scratches on her car).  Finally, Plaintiff alleges that a causal connection exists between the protected activity and the adverse employment action because "[t]he targeted individuals include the disabled, perceived lesbians and gay men . . . or anyone who opposes or questions the targeted discriminatory activities." *See* Dkt. No. 8-1 at ¶ 24.  Plaintiff alleges that he is specifically targeted in unfounded Workplace Violence complaints, Human Rights grievances, and Health Department complaints.  *See id.* at ¶ 18.  Finally, unlike Plaintiff's Title VII sex discrimination retaliation claim, it was reasonable for Plaintiff to believe that he was being discriminated against because of his perceived disability, as the harassing emails literally referenced the perceived disability and Plaintiff complained of the emails to Defendant.  Therefore, Defendant's motion to dismiss Plaintiff's ADA retaliation claim is denied.

**D.      Title VII and ADA Hostile Work Environment Claims**

In order to state a Title VII claim of hostile work environment, a plaintiff must plausibly allege that "the work place is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment." *Gorzynski v. JetBlue Airways Co.*, 596 F.3d 93, 102 (2d Cir.

2010). Further, the conduct at issue must be "so severe and so pervasive as to create an

objectively hostile or abusive work environment, and where the victim subjectively perceives the

environment to be abusive." *Robinson v. Purcell Const. Corp.*, 859 F.Supp.2d 245, 254

(N.D.N.Y. 2012) (citing *Richardson v. N.Y. State Dep't of Correctional Serv.*, 180 F.3d 426, 436

(2d Cir. 1999) (internal quotations omitted). The incidents must be more than episodic; "[the

incidents] must be sufficiently continuous and concerted in order to be deemed pervasive."

*Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). Finally, "[b]eyond demonstrating a hostile

work environment, a plaintiff must show a basis for imputing the objectionable conduct to the

employer." *Gorzynski*, 596 F.3d at 103 (citation omitted).

   In order to state a claim for hostile work environment under Title VII, the court must

consider the extent to which the discriminatory conduct occurred *because of plaintiff's sex. See*

*Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("It is 'axiomatic' that in order to establish a

sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct

occurred because of [his] sex") (quotation and citation omitted). Plaintiff alleges very few

incidents of discriminatory conduct and sexual harassment that are based on his sex, rather than

his sexual orientation. The offensive emails Plaintiff has received, for example, involve explicit

images of individuals engaged in homosexual activity and derogatory text that were directed at

Plaintiff's sexual orientation. *See* Dkt. No. 8-1 at ¶ 5 ("[Plaintiff has] received unwanted emails . .

. [involving] derogatory stereotype characterizations of *gay men* and unsafe sex"). Again,

although Plaintiff alleges the conduct occurs because he is perceived as lacking masculine

qualities, Plaintiff does not plausibly allege any facts from which that conclusion may be drawn.

The few comments that are made about Plaintiff being "too emotional" and "too sensitive," are

quintessentially episodic, and not sufficiently severe or pervasive enough to state a Title VII hostile work environment claim based on sex discrimination. Therefore Plaintiff's hostile work environment claim under Title VII is dismissed.

ADA hostile work environment claims are analyzed under the same frame work as Title VII, except that in order to state a claim for hostile work environment under the ADA, "[a] plaintiff must also demonstrate that [he] was subjected to the hostility because of [his disability]." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999); *see also Hendler v. Intelecom USA, Inc.*, 963 F. Supp. 200, 208 (E.D.N.Y. 1997) (holding that an ADA hostile work environment claim is analyzed under same framework at Title VII). Factors to consider in evaluating a hostile work environment claim include the following: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). As discussed above, Plaintiff is "regarded as belonging to a group associated with high risk for HIV/AIDS, homosexual men living with HIV/AIDS," which satisfies the "regarded as" definition of disability under the ADA. The unsolicited emails Plaintiff received, described above, clearly are aimed at Plaintiff's perceived HIV/AIDS status. *See* Dkt. No. 8-1 at ¶ 5-7. In addition, these emails have far more potential for humiliation than the alleged instances of sex discrimination, particularly the incident where a sexually explicit video, with audio, began playing when Plaintiff was in the presence of a female co-worker. *See* Dkt. No. 8-1 at ¶ 7. The emails understandably make Plaintiff feel "violated, anxious, ashamed, depressed, unaccepted, and fearful in [Plaintiff's] workplace." *Id.* at ¶ 6.

In addition to receiving the offensive emails, Plaintiff alleges that co-workers are repeatedly filing unfounded and malicious complaints against him. *See id.* at ¶ 18. At this early stage in the proceedings, Plaintiff has alleged sufficient facts that warrant imputing the objectionable conduct on NYSIF. For example, Plaintiff alleges that meetings have been held to address inappropriate computer use since 2010. *See* Dkt. No. 8-1 at ¶¶ 3, 20-21 ("[C]o-workers have openly boasted about the ability to manipulate [complaints] . . . The NYSIF Executive Deputy Attorney and NYSIF Personnel Director have held meetings with the entire Binghamton staff . . . since 2011 regarding this inappropriate activity"). Plaintiff also alleges that the NYSIF Affirmative Action Office revised its intake procedures to include a disciplinary warning to those who plan on frivolously filing complaints. Plaintiff claims, however, that Defendant has not enforced this new policy. *See id.* at ¶ 26. Reading Plaintiff's *pro se* amended complaint in a liberal manner, Plaintiff has alleged sufficient facts to proceed with a hostile work environment claim under the ADA. Therefore, Defendant's motion to dismiss Plaintiff's ADA hostile work environment claim is denied.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to amend the complaint is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion to dismiss is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Plaintiff's Title VII discrimination, retaliation, and hostile work environment, as well as Plaintiff's ADA discrimination claims, are **DISMISSED**;[1] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules; and the Court further

**ORDERS** that all further pretrial matters are referred to Magistrate Judge Peebles.

**IT IS SO ORDERED.**

Dated: March 30, 2015
      Albany, New York

**Mae A. D'Agostino**
**U.S. District Judge**

---

[1] As a result of this Memorandum-Decision and Order, the only remaining claims are ADA retaliation and hostile work environment.