**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT A. DOLLINGER,**

                                  **Plaintiff,**

    vs.                                                                 3:14-CV-908
                                                                                    (MAD/DEP)

**NEW YORK STATE INSURANCE FUND; NYSIF
BOARD OF COMMISSIONERS; WILLIAM
O'BRIEN; PETER CUSICK; JAMES FEHRER;
CHARLES BROWNING; SCOTT ENGLEHART;
MARK KENYON; HEATHER WOOLFOLK;
JOSEPH MULLEN; ALYCE SIEGEL; SUSAN
LEFKOWITZ; JOHN MASSETTI; JOE NOLTE;
THOMAS RACKO; TINA CHRISTIANO;
ROBERT VERHAYDEN; and MARK GALLO,**

                                  **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**ROBERT A. DOLLINGER**
84 State Line Road
Vestal, New York 13850
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK**          **JOSHUA L. FARRELL, AAG**
**STATE ATTORNEY GENERAL**        **ADRIENNE J. KERWIN, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**OFFICE OF FRANK W. MILLER**       **CHARLES C. SPAGNOLI, ESQ.**
6575 Kirkville Road                               **FRANK W. MILLER, ESQ.**
East Syracuse, New York 13057
Attorneys for Defendant Browning

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

*Pro se* plaintiff, Robert Dollinger, brought this action against his employer, the New York

State Insurance Fund ("NYSIF"), alleging discrimination, retaliation, and hostile work environment based on his sexual orientation and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). *See* Dkt. No. 1. Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 5-1. Plaintiff responded, filed a cross-motion to amend his complaint, and submitted a proposed amended complaint in support of his motion. *See* Dkt. No. 8-1.

On March 30, 2015, the Court issued a Memorandum-Decision and Order granting in part and denying in part Defendant's motion to dismiss. *See* Dkt. No. 10 at 21. The Court dismissed Plaintiff's Title VII discrimination, retaliation, and hostile work environment claims, as well as Plaintiff's ADA discrimination claims, but denied the motion as to Plaintiff's ADA hostile work environment and retaliation claims. *See* Dkt. No. 10 at 22. Moreover, the Court granted Plaintiff's cross motion to amend the complaint. Thereafter, Defendant filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure seeking dismissal of the amended complaint. *See* Dkt. No. 20-1. Plaintiff opposed the motion and filed a cross-motion to amend his complaint, but failed to submit a proposed amended complaint. *See* Dkt. Nos. 23, 25. On August 26, 2015, Plaintiff filed his proposed amended complaint. *See* Dkt. No. 27. Defendant opposed Plaintiff's motion for leave to amend. *See* Dkt. No. 26.

In a December 10, 2015 Memorandum-Decision and Order, the Court first found that the amended complaint, as pled, does not entitle Plaintiff to relief because the only Defendant, the NYSIF, was entitled to sovereign immunity because Title I of the ADA did not override sovereign immunity. *See* Dkt. No. 32 at 7. As such, the Court granted Defendant's motion for judgment on the pleadings. *See id.* However, in his proposed second amended complaint, the Court noted that Plaintiff named sixteen individuals in addition to the NYSIF. *See id.* Further, the Court found that, because the only relief Plaintiff seeks is prospective injunctive relief, he is

able to bring suit against the individual actors in their official capacities under the *Ex Parte Young* exception. *See id.* at 7-8. Moreover, the Court noted that the proposed second amended complaint alleged violations of his rights under the Rehabilitation Act ("RA"), in addition to the ADA claims. *See id.* at 8. Because New York and its agencies have continued to accept federal funds, the Court found that it has been repeatedly held by courts in the Second Circuit that sovereign immunity has been waived for claims brought pursuant to Section 504 of the RA. *See id.* Having found no prejudice or undue delay, the Court granted Plaintiff's motion to amend. *See id.*

Currently before the Court are Defendants' motions for judgment on the pleadings and to dismiss for lack of personal jurisdiction. *See* Dkt. Nos. 44, 47 & 63.

## II. BACKGROUND

Plaintiff is an employee of the New York State Insurance Fund, located at their office in Binghamton, New York. According to Plaintiff, Defendant NYSIF has allowed "a discriminatory hostile atmosphere, which includes discrimination based on disability, sexual harassment, and retaliation." Dkt. No. 27 at 7. Plaintiff claims that he has been subjected to such treatment because he is "regarded as belonging to a group associated with high risk for HIV/AIDS; homosexual men living with HIV/AIDS." *Id.*

Plaintiff contends that he has "received unwanted emails including unwanted sexual pictures of men as well as derogatory stereotype character representations of gay men and unsafe sex. One graphic references "NO AIDS" and portrays a symbolic male figure engaging in unsafe sex with a line drawn through it." *Id.* at 8. Further, Plaintiff contends that one email had "an image titled 'Gay Terrorist' and depict[ed] a man dressed like a woman in high heels." *Id.*

Plaintiff claims that he has "opposed discrimination and participated in internal NYSIF discrimination complaints as well as NYS Division of Human Rights investigations." *Id.* at 9.

3

According to Plaintiff, he has "reported harassing emails and materials placed in [his] work area to [his] supervisors and the Affirmative Action Office at NYSIF. [His] reporting included NYSIF interviews regarding discriminatory behavior with respect to disability and sexual harassment and written responses." *Id.* at 10. On March 16, 2012, Plaintiff was named as an aider and abettor in a sex discrimination complaint. *See id.* In that complaint, it was alleged that Plaintiff "was photographing females in the women's lavatory to share with the then male Policyholder Services Manager who is now the Business Manager." *Id.* Without providing any detail, Plaintiff alleges that "[o]ther NYSIF interviews involved disability complaints and sexual harassment complaints levied against NYSIF and the then female Business Manager." *Id.*

Plaintiff also discusses a number of instances of alleged harassment and discrimination that do not appear to directly involve him. For example, Plaintiff contends that, "[u]pon information and belief, security and fire alarms were set off and complaints were levied about the inability to distinguish the tone of the fire alarm from the security alarm and the 'complete lack of concern or competence' of the then female Business Manager in this regard. Although the alarms had been the same in the past, when a prior male attorney was the Business Manager, no complaints were levied for 'lack of concern or competence' in this regard." *Id.* at 12.

Plaintiff also alleges that he has been falsely named in workplace violence complaints. *See id.* at 13-14. Although Plaintiff does not specify what actions, if any, were taken against him as a result of the ensuing investigation, he does claim that the NYSIF Executive Deputy Attorney and NYSIF Personnel Director "have held meetings with the entire Binghamton staff including the Legal Department and PEF since 2011 regarding this inappropriate activity." *Id.* at 13-15.

Plaintiff contends that others are also mistreated at his workplace. Specifically, Plaintiff asserts that "[t]he targeted individuals include the disabled, perceived lesbians and gay men, women and men who do not conform to traditional female or male gender stereotypes, or anyone

4

who opposes or questions the targeted discriminatory activities. Scare tactics in this regard are especially heightened in the Binghamton District Office where there are many coworkers who did not compete in open Civil Service Exams for hiring or promotions, but were instead selected as a result of political affiliation as well as quid pro quo elements involving former NYSIF Executive Management." Dkt. No. 27 at 16.

Plaintiff contends that the NYSIF Affirmative Action Intake procedures were revised in June of 2012 to include a disciplinary warning regarding the filing of false and malicious complaints. *See id.* at 17. Despite these changes, however, "NYSIF has not applied this policy and has allowed this continuous discriminatory activity go on without recourse or justice for the targeted victims." *Id.*

In May of 2013, NYSIF posted a vacancy notice (E13-03) seeking candidates for a Policyholder Service Manager in the Binghamton District Office. *See* Dkt. No. 27 at 20. Plaintiff applied for the position. According to Plaintiff, that same month, "a male coworker who was the subject of discipline for improper computer use, including shared emails containing sexual content, sexual innuendo, profanity and nudity, who also filed a Workplace Violence Complaint naming NYSIF, me, and the Affirmative Action Officer as aggressors of violence in the workplace, then emailed false negative information relating to my personal life to the NYSIF Executive Director, the NYSIF Director of Administration, and the NYSIF Personnel Director stating that I had photographed women at work and that I had thrown a hot cup of coffee at my nephew at home and stated that he is fearful of me and that 'It is evident that Mr. Dollinger's domestic violence has spill[ed] over into the workplace, compromising the safety of . . . coworkers and resulting in lost productivity. . . .'" *Id.* at 20-21. Plaintiff claims that, on information and belief, this male coworker was the only other candidate being reviewed for the vacancy. *See id.* at 21. Despite having worked at the NYSIF for twenty-eight years in various

5

positions, Plaintiff has not been promoted to a management position. *See id.* at 22-23.

In July of 2013, NYSIF posted a second vacancy notice (E13-04) seeking candidates for the Policyholder Service Manager position in the Binghamton District Office. *See id.* at 23. Plaintiff applied for the position but was not interviewed. *See id.* In August of 2013, Plaintiff was advised by a coworker "that she and others observed information about [his] personal life that was placed in an electronic common retain folder associated with" a fax box, which was used and accessed by the entire staff through NYSIF's email system. *See id.* "Upon information and belief the information was placed in the folder by the male candidate who had interviewed for Vacancy Notice (E13-03) for PHS Manager." *Id.* Moreover, on August 14, 2013, coworkers advised Plaintiff that the same male coworker "was now boasting that he and the Legal Department had intervened and that [Plaintiff] would no longer be the selected candidate for PHS Manager." *Id.* at 25. Plaintiff reported this conduct to the NYSIF Affirmative Action Officer on August 14, 2013 but, after referring the complaint to an outside agency, no action was taken. *See id.* at 25-26.

Plaintiff claims that he is "being subjected to this discrimination and hostility on the basis of [his] disability, sexual harassment including gender stereotyping, and in retaliation for opposing discrimination and participating in internal NYSIF discrimination complaints and NYS Division of Human Rights investigations." Dkt. No. 27 at 26-27. Plaintiff alleges that he filed his first workplace violence complaint at NYSIF in May of 2014 after being threatened for pursuing his rights. *See id.* at 28. "Threats and workplace violence has continued and include letters and other threatening and derogatory information mailed to my home and left in my work station including August and December of 2014 as well as negative interactions, including threats of discipline, in March 2015 and June 2015." *Id.* at 28-29. Plaintiff also claims that in October of 2014, he "was subjected to interrogation and threatened with discipline for allegedly slamming a

6

door." *Id.* at 29.

Plaintiff concludes his complaint by alleging that, "[o]n information and belief NYSIF policymakers including William O'Brien, Peter Cusick, Heather Woolfolk, Alyce Siegel, Isbell Jeng, Jacqueline Herman, and Joseph Mullen are aiding and abetting and/or inciting unlawful treatment that includes threats, violence, hostility and retaliation [i]n willful violation of the Americans With Disabilities Act and the Rehabilitation Act of 1973[.]" *Id.* at 30.

In the motion for judgment on the pleadings filed by those Defendants represented by the Attorney General's Office (the "State Defendants"), they argue that the Court should dismiss the second amended complaint for the following reasons: (1) Plaintiff's second amended complaint sets forth no viable claim against any of the individually named Defendants in their individual capacities; (2) the Court's prior decisions limit the causes of action Plaintiff may pursue in his second amended complaint; (3) Plaintiff's ADA and RA hostile work environment claim is neither cognizable nor timely; (4) on the pleadings, Plaintiff has no cognizable ADA or RA retaliation claim; (5) Plaintiff failed to timely serve his complaint on Susan Lefkowitz and the NYSIF Board of Commissioners, requiring the action be dismissed against both; (6) because Plaintiff's prayer for relief is defective, dismissal of the complaint is required; (7) Plaintiff's second amended complaint's claims against the official capacity Defendants must be dismissed as redundant; and (8) Plaintiff's second amended complaint's claims against those Defendants who are not mentioned in the complaint must be dismissed. *See* Dkt. No. 47-1.

Defendant Browning has separately moved to dismiss. *See* Dkt. No. 44. In his motion, Defendant Browning raises the following arguments: (1) Plaintiff is not disabled within the meaning of the ADA or the RA; (2) the complaint fails to state a claim for disability discrimination as to him; (3) there is no remaining basis to hold Defendant Browning liable in this action; and (4) the complaint fails to state a claim upon which relief can be granted. *See* Dkt. No.

7

44-4. Finally, Defendant Lefkowitz moves to dismiss the second amended complaint because she has not been properly served in this action and, even assuming proper service, it should be dismissed for failure to state a claim. *See* Dkt. No. 63-2.

Currently before the Court are Defendants' motions to dismiss the second amended complaint and Plaintiff's opposition thereto.

### III. DISCUSSION

**A.     Standard of Review**

In deciding a Rule 12(c) motion, the court "'employ[s] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6).'" *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the party's claim, accepting as true all well-pleaded facts and drawing all reasonable inferences in favor of the pleader. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the complaint must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). When the pleader is *pro se*, the court must hold their pleadings to a more lenient standard than "formal pleadings drafted by lawyers." *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").

On a Rule 12(c) motion, the court may consider the following matters outside the four corners of the complaint without converting the motion to one for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by

8

reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 421-22 (2d Cir. 2011) (quotation omitted); *see also Jenkins v. County of Washington*, 126 F. Supp. 3d 255, 274 (N.D.N.Y. 2015) (citation omitted).

**B.  Claims Against the Individual Defendants in Their Individual Capacities**

It is well established that individuals may not be sued in their individual or personal capacity under the ADA or the Rehabilitation Act. *See Darcy v. Lippman*, 356 Fed. Appx. 434, 437 (2d Cir. 2009); *Spiegel v. Schulmann*, 604 F.3d 72 (2d Cir. 2010). As such, to the extent that Plaintiff has named the Defendants in their individual capacities, his ADA or RA causes of action against them must be dismissed. Moreover, as set forth in this Court's December 10, 2015 Memorandum-Decision and Order, the only relief Plaintiff seeks is prospective injunctive relief, which is properly brought against the Defendants in their official capacities.

Based on the foregoing, the Court finds that Plaintiff has failed to set forth any claim against the Defendants in their individual capacities.

**C.  ADA and RA Discrimination**

The ADA prohibits "discrimination against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case of discrimination under the ADA or the RA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d

Cir. 2006) (citing *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)); *Quadir v. N.Y.S. Dep't of Labor*, 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014) (holding that the RA "imports the discrimination standards of Title I of the ADA") (citations omitted).

Under the ADA, "disability" is defined as follows: (a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such impairment; or, (c) being regarded as having such an impairment. *See* 42. U.S.C. § 12102(1). An individual meets the third, "regarded as," category if "the individual establishes that he . . . has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). "A 'regarded as' claim turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability." *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005) (internal citations and quotations omitted). The Second Circuit explained in *City of Meriden* that

> [a] plaintiff cannot state a claim under the "regarded as" prong of
> the ADA . . . simply by alleging that the employer believes some
> physical condition renders the plaintiff disabled. Rather, the
> plaintiff must allege that the employer believed, however
> erroneously, that the plaintiff suffered from an "impairment" that, if
> it truly existed, would be covered under the statute and that the
> employer discriminated against the plaintiff on that basis.

*Francis v. City of Meriden*, 129 F.3d 281, 285 (2d Cir. 1997).

"An individual who can show that an employer made an employment decision because of a perception of a disability based on myth, fear, or stereotype, will satisfy the regarded as part of the definition of disability." *Dollinger v. State Ins. Fund*, 44 F. Supp. 2d 467, 479 (N.D.N.Y. 1999) (emphasis added) (internal quotations and citation omitted). A "disability" includes HIV positive status. *See Bragdon v. Abbot*, 524 U.S. 624 (1998); *see also Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998) (confirming the Second Circuit's conclusion that HIV positive status

constitutes a disability).

In the present matter, the Court first finds that, since Plaintiff failed to respond to this aspect of the State Defendants' motion for judgment on the pleadings, he has abandoned these causes of action. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 194-95 (2d Cir. 2014). Even assuming Plaintiff had not abandoned these causes of action, the Court finds that Plaintiff has failed to plausibly allege facts supporting both the second and fourth elements of a disability discrimination claim. Previously, the Court held that Plaintiff's original complaint plausibly alleged that he is "regarded as" being disabled within the meaning of the ADA. In his deposition testimony, however, Plaintiff has clarified his position.[1] As discussed, in his second amended complaint, Plaintiff repeatedly stated that he is "regarded as belonging to a group associated with high risk for HIV/AIDS; homosexual men living with HIV/AIDS." Dkt. No. 27 at 7. Liberally construing this language, the Court believed that Plaintiff was alleging that Defendants regarding him as having HIV or AIDS. During his deposition, however, Plaintiff makes clear that he is not claiming that any of the named Defendants believe that he has HIV or AIDS. Rather, they regard him as belonging to a group (homosexual men) who engage in activities that make it more likely that he will eventually contract HIV. *See* Dkt. No. 46-1 at 69-90. Similarly, in his response to the pending motions, Plaintiff makes clear that he is "regarded as belonging to a group associated with high risk for HIV/AIDS." Dkt. No. 57 at 2. Since Plaintiff is not alleging that Defendants perceived him as having HIV or AIDS, or any other impairment that limits a major life activity, it necessarily follows that he is not "regarded as" having a disability within the meaning of the ADA or RA.[2]

---

[1] The State Defendants attached Plaintiff's deposition testimony to their answer.

[2] In his deposition, Plaintiff responded to questions regarding his alleged disability as
(continued...)

11

Even if Plaintiff could satisfy the second element, his ADA and RA discrimination claims fail on the fourth element – *i.e.*, that he suffered an adverse employment action because of his disability. Aside from entirely conclusory allegations, Plaintiff's second amended complaint fails to plausibly allege that he suffered an adverse employment action because of any alleged disability. As discussed above, Plaintiff specifically alleges that he applied for two management positions in 2013 but was not selected for these openings when another candidate emailed "false negative information" about Plaintiff to supervisors at the NYSIF. *See* Dkt. No. 27 at 20-25. Plaintiff does not allege that this email contained information about his alleged disability; rather, the email discussed the fact that Plaintiff had been disciplined at work for photographing a woman and that he had been the subject of a domestic violence complaint. *See id.* at 21-22. These allegations do not support the conclusion that Plaintiff was not promoted because any named Defendant regarded Plaintiff has having a disability.

Based on the foregoing, the Court grants Defendants' motion for judgment on the pleadings as to Plaintiff's ADA and RA discrimination claims.

**D.     ADA and RA Hostile Work Environment**

ADA hostile work environment claims are analyzed under the same frame work as Title

---

[2](...continued)
follows:

> Q.     What ADA disability do you suffer from?
>
> A.     I am associated with – I belong to a group associated with high risk behavior for HIV/AIDS.
>
> Q.     Is that the totality of your disability?
>
> A.     Yes.

Dkt. No. 46-1 at 69-70.

VII, except that in order to state a claim for hostile work environment under the ADA, "[a] plaintiff must also demonstrate that [he] was subjected to the hostility because of [his disability]." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999); *see also Hendler v. Intelecom USA, Inc.*, 963 F. Supp. 200, 208 (E.D.N.Y. 1997) (holding that an ADA hostile work environment claim is analyzed under same framework at Title VII).

As the Second Circuit has recognized, in order to prevail under the standard, a plaintiff must establish two elements. First, for a work environment to be sufficiently hostile so as to be actionable, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (citing *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)). The determination of hostility "depends on whether a reasonable person would find the work environment to be hostile and whether plaintiffs subjectively perceived it to be so." *Id.* Factors to consider in evaluating a hostile work environment claim include the following: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "'Generally, isolated incidents of harassment do not give rise to a hostile work environment claim; instead, the incidents must be sufficiently continuous and concerted in order to be deemed persuasive.'" *Martinsky v. City of Bridgeport*, 814 F. Supp. 2d 130, 151 (D. Conn. 2011) (quotations omitted). "'Simple teasing, offhand comments, and isolated incidents . . . will not amount to discriminatory changes in the terms and conditions of employment sufficient to meet the threshold of severity or pervasiveness.'" *Id.* (quotations omitted).

Second, to successfully raise a hostile work environment claim, a plaintiff must show that

"a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) (citing *Karibian v. Columbia Univ.*, 14 F.3d 773, 779 (2d Cir. 1994)). "[E]mployer liability for a hostile environment created by coworkers, or by a low-level supervisor who does not rely on his supervisory authority in carrying out the harassment, attaches only when the employer has 'either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Id.* (quoting *Kotcher v. Rosa & Sullivan Appliance Ctr. Inc.*, 957 F.2d 59, 63 (2d Cir. 1992)).

In the present matter, Plaintiff has failed to allege conduct sufficiently severe to plausibly allege a hostile work environment. In his second amended complaint, Plaintiff repeatedly alleges that he was subjected to hostile comments and actions by his coworkers. The majority of these comments, however, are in no way related to any alleged disability. Plaintiff alleges that he has received unwanted emails "including unwanted sexual pictures of men as well as derogatory stereotype character representations of gay men and unsafe sex. One graphic references 'NO AIDS' and portrays a symbolic male figure engaging in unsafe sex with a line drawn through it. One email has an image titled 'Gay Terrorist' and depicts a man dressed like a woman in high heels." Dkt. No. 27 at 8. This is the only specific allegation raised in the second amended complaint in which Plaintiff claims that he was subjected to harassment related to HIV or AIDS. The remaining allegations generally pertain to comments made by unidentified individuals regarding Plaintiff's sexuality, which cannot support an ADA or RA hostile work environment claim. The one identified incident in the second amended complaint is insufficient to meet the threshold of severity or pervasiveness. *See Martinsky*, 814 F. Supp. 2d at 151 (quotation omitted).

Moreover, as discussed above, Plaintiff has failed to plausibly allege that he is regarded as being disabled within the meaning of the ADA and RA. As such, his hostile work environment

claim fails as a matter of law on this alternative ground. *See Skinner v. City of Amsterdam*, 824 F. Supp. 2d 317, 331 (N.D.N.Y. 2010) (dismissing the plaintiff's ADA claims were he failed to make this threshold showing).

Based on the foregoing, the Court grants Defendants' motions for judgment on the pleadings as to Plaintiff's ADA and RA hostile work environment claims.

**E.     ADA and RA Retaliation**

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A retaliation case under the ADA requires "a showing that the employee was engaged in an activity protected by the ADA." *Gold v. Carus*, 131 Fed. Appx. 748, 750 (2d Cir. 2005) (quotations and citation omitted). ADA retaliation claims are analyzed under the same framework as Title VII retaliation claims. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) ("[The Second Circuit] conclude[s] that it is appropriate to apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA").

"[The ADA's] anti-retaliation provision must be construed to cover a broad range of employer conduct." *Thompson v. North American Stainless, LP*, 562 U.S. 170, 173 (2011) (citation omitted). Keeping that premise in mind, the Second Circuit has held that "retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second element of the retaliation prima facie case." *Martin v. New York State Dep't of Corr. Servs.*, 224 F. Supp. 2d 434, 448 (N.D.N.Y. 2002) (citing *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)). In determining whether the co-worker harassment is "sufficiently severe," the court should consider whether the plaintiff has

15

"endure[d] a materially adverse change in the terms and conditions of employment." *Martin*, 224 F. Supp. 2d at 448 (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)) (citation omitted). Further, "material adversity is to be determined objectively, based on the reactions of the reasonable employee." *Rivera v. Rochester Genesse Regional Transp. Authority*, 743 F.3d 11, 25 (2d Cir. 2012).

In the present matter, the Court finds that Plaintiff has failed to plausibly allege that he engaged in activity protected by the ADA or that he suffered a materially adverse change in the terms of his employment in retaliation for engaging in such protected activity. As discussed above, the only alleged "disability" mentioned in the second amended complaint are individuals who are "regarded as belonging to a group associated with high risk for HIV/AIDS." Since such individuals are not disabled within the meaning of the ADA or RA, advocating on their behalf cannot serve as the predicate protected activity. Again, being "associated with high risk behavior" does not equate to being perceived as having an impairment that substantially limits a major life activity.

Moreover, Plaintiff has failed to plausibly allege that he suffered a materially adverse employment action. The isolated "No AIDS" reference which, according to Plaintiff occurred at some point in 2008 or 2009, is insufficient to dissuade a reasonable worker from making or supporting a charge of discrimination. *See Christiansen v. Omnicom Group, Inc.*, 167 F. Supp. 3d 598, 617 (S.D.N.Y. 2016) (quotation omitted). Further, although Plaintiff does complain that he did not receive a promotion in 2013, he fails to plausibly allege that any alleged protected conduct is the cause for the decision. Rather, as discussed above, Plaintiff contends that he was not promoted to the management positions because another candidate emailed "false negative information" about Plaintiff to supervisors at the NYSIF, which was entirely unrelated to any alleged disability. *See* Dkt. No. 27 at 20-25.

Based on the foregoing, the Court grants Defendants' motions for judgment on the pleadings as to Plaintiff's ADA and RA retaliation claims.

**F.    Defendant Browning's Motion for Judgment on the Pleadings**

Defendant Browning argues that he is entitled to judgment on the pleadings because Plaintiff is not disabled with the meaning of the ADA or RA and because the second amended complaint fails to state a claim for disability discrimination against him. *See* Dkt. No. 44. For all of the reasons set forth above, the Court finds that Defendant Browning, who is an employee of the NYSIF, is entitled to judgment on the pleadings. Moreover, the Court also notes that Defendant Browning is only listed in the caption of the second amended complaint. There are no allegations made against him in the body. As such, Defendant Browning's motion is granted on this alternative basis.

Based on the foregoing, the Court grants Defendant Browning's motion for judgment on the pleadings.

**G.    Defendant Lefkowitz's Motion**

In addition to moving with the State Defendants for judgment on the pleadings, Defendant Lefkowitz also moved to dismiss for, among other reasons, lack of personal jurisdiction. *See* Dkt. No. 63. Since the Court has granted the State Defendants' motion for judgment on the pleadings, Defendant Lefkowitz's motion is denied as moot.

**H.    Leave to amend**

As a general matter, "'the district court has discretion whether or not to grant leave to amend, and its decision is not subject to review on appeal except for abuse of discretion.'" *Shomo v. New York*, 374 Fed. Appx. 180, 182 (2d Cir. 2010) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). An opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*,

222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). However, because "[a] *pro se* complaint is to be read liberally . . . the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might bet stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted).

In the present matter, Plaintiff has already amended his original complaint on two separate occasions. As discussed above, Plaintiff has failed to allege that he has a disability within the meaning of the ADA and RA. Since Plaintiff cannot establish this prerequisite, granting Plaintiff leave to file a third amended complaint would be futile. Moreover, Plaintiff has been granted three opportunities to provide the Court with sufficient factual detail to support his claims but repeatedly failed to do so. As his deposition testimony makes clear, those facts simply do not exist. Although the Court does not doubt or question the fact that Plaintiff has been subjected to some offensive conduct in the workplace, the conduct alleged is simply not prohibited by the ADA and RA.

Based on the foregoing, the Court dismisses Plaintiff's claims against all named Defendants with prejudice.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motions for judgment on the pleadings (Dkt. Nos. 44 and 47) are **GRANTED**; and the Court further

**ORDERS** that Defendant Lefkowitz's motion to dismiss for lack of personal jurisdiction

(Dkt. No. 63) is **DENIED** as moot; and the Court further

    **ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

    **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 18, 2016
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge