UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT A. DOLLINGER,

                              **Plaintiff,**

   vs.                                                        3:14-CV-908
                                                                (MAD/DEP)

**NEW YORK STATE INSURANCE FUND** *et al*,

                              **Defendants.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**ROBERT A. DOLLINGER**
P.O. Box 270
Kirkwood, New York 13795
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK**         **HELENA LYNCH, AAG**
**STATE ATTORNEY GENERAL**         **OMAR J. SIDDIQI, AAG**
The Capitol                                      **ADRIENNE J. KERWIN, AAG**
Albany, New York 12224
Attorneys for Defendants New York State
Insurance Fund and Scott Anglehart

**OFFICE OF FRANK W. MILLER**        **CHARLES C. SPAGNOLI, ESQ.**
6575 Kirkville Road                           **FRANK W. MILLER, ESQ.**
East Syracuse, New York 13057
Attorneys for Defendant Browning

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

*Pro se* plaintiff, Robert Dollinger, brought this action against his employer, the New York State Insurance Fund ("NYSIF"), alleging discrimination, retaliation, and hostile work environment based on his sexual orientation and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act. *See* Dkt. No. 1. On March 30, 2015, the Court dismissed Plaintiff's Title VII claims for discrimination, retaliation,

and hostile work environment because, at the time, the Second Circuit did not recognize sexual orientation as a protected class under Title VII. *See* Dkt. No. 10 at 10, 15, 19-20.

On August 26, 2015, Plaintiff filed a second amended complaint. *See* Dkt. No. 27. On March 22, 2016, Defendants moved for judgment on the pleadings to dismiss the second amended complaint. *See* Dkt. No. 47. On November 18, 2016, the Court granted NYSIF's motion, denied Plaintiff leave to amend, and entered judgment in Defendants' favor. *See* Dkt. No. 68. On December 1, 2016, Plaintiff appealed the Court's decision to the Second Circuit. *See* Dkt. Nos. 71-76. On February 13, 2018, the Second Circuit remanded in part and instructed the Court to give "further consideration on the Title VII claims of sex-based discrimination that Dollinger raised in his original complaint. *Cf. Zarda v. Altitude Express*, 855 F.3d 76 (2015), *reh'g en banc granted*, No. 15-3775 (2d Cir. May 25, 2017, ECF No. 271)." Dkt. No. 78 at 4. The panel also instructed the Court to give "further consideration of Dollinger's motion [for leave to amend] in conjunction with his allegation of sex-based discrimination, hostile work environment, and retaliation under Title VII." *Id.* at 5. On February 26, 2018, the Second Circuit issued its opinion in *Zarda*, holding that Title VII prohibited discrimination on the basis on sexual orientation. *See Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 132 (2d Cir. 2018) (en banc).

On May 4, 2018, Plaintiff filed a motion for leave to amend his complaint in order to include Title VII claims. *See* Dkt. No. 90. Defendants oppose this motion and have filed cross motions to dismiss for failure to state a claim and for judgment on the pleadings. *See* Dkt. Nos. 97 & 100.

Currently before the Court are Plaintiff's motion for leave to amend, Defendant Charles Browning's cross motion to dismiss for failure to state a claim, and Defendants NYSIF and Scott Anglehart's cross motion for judgment on the pleadings. For the following reasons, Plaintiff's motion for leave to amend is granted, Defendant Browning's motion to dismiss is granted, and

2

Defendants NYSIF and Anglehart's motion for judgment on the pleadings is granted in part and denied in part.

## II. BACKGROUND

Plaintiff is an employee of the New York State Insurance Fund, located at their office in Binghamton, New York. *See* Dkt. No. 90-1 at 1-2. According to Plaintiff's third amended complaint, Defendant NYSIF has allowed "sex-based discrimination, a hostile work environment, and retaliation." *Id.* at 7.

Plaintiff claims that he has been subjected to such treatment because of his sexual orientation. *See id.* Plaintiff contends that he has "received unwanted emails having to do with [his] sexual orientation including unwanted sexual pictures of men as well as derogatory stereotype representations of gay men and sex." *Id.* at 9. One message he received was captioned "'NO AIDS' and portray[ed] a symbolic male figure engaging in unsafe sex with a line drawn through it." *Id.* Further, Plaintiff contends he was emailed "an image titled 'Gay Terrorist' and [it] depict[ed] a man dressed like a woman in high heels." *Id.*

Plaintiff also received emails featuring "fully or partially nude men." *Id.* On one occasion, Plaintiff opened an email that was supposed to contain work material in front of a colleague. *See id.* When Plaintiff opened the email, "a nude male graphic appeared on the screen and related audio began playing." *Id.* Plaintiff claims that as a result of this incident, he "felt violated, degraded, humiliated, unaccepted and fearful for [his] job." *Id.* at 9-10.

Plaintiff claims that he has "opposed discrimination and participated in internal NYSIF discrimination complaints as well as NYS Division of Human Rights investigations." *Id.* at 10. According to Plaintiff, he has "reported harassing emails and materials placed in [his] work area to [his] supervisors and the NYSIF Affirmative Action and PEF. [His] reporting included NYSIF interviews regarding discriminatory behavior with respect to sexual harassment and written

3

responses." *Id.* at 10. Plaintiff also alleges that Defendant Anglehart kept "a tally board that tracked . . . those who reported inappropriate sexual emails." *Id.* at 12.

Plaintiff also claims that he has been falsely named in workplace violence complaints. *See id.* at 14. One complaint accused Plaintiff of "photographing females to share with the PHS Manager . . . ." *Id.* at 16. Although Plaintiff does not specify what actions, if any, were taken against him as a result of the ensuing investigation, he does claim that the NYSIF Executive Deputy Attorney and NYSIF Personnel Director "have held meetings with the entire Binghamton staff including the Legal Department and PEF since 2011 regarding this inappropriate activity." *Id.* at 16.

In May of 2013, NYSIF posted a vacancy notice (E13-03) seeking candidates for a Policyholder Service Manager in the Binghamton District Office. *See id.* at 19. Plaintiff applied for the position. *See id.* According to Plaintiff, that same month, "a male coworker who was the subject of discipline for improper computer use, including shared emails containing sexual content, sexual innuendo, profanity and nudity, who also filed a Workplace Violence Complaint naming NYSIF, me, and the Affirmative Action Officer as aggressors of violence in the workplace, then emailed false negative information relating to my personal life to the NYSIF Executive Director, the NYSIF Director of Administration, and the NYSIF Personnel Director stating that I had photographed women at work and that I had thrown a hot cup of coffee at my nephew at home and stated that he is fearful of me and that 'It is evident that Mr. Dollinger's domestic violence has spill[ed] over into the workplace, compromising the safety of . . . coworkers and resulting in lost productivity. . . .'" *Id.* at 19-20. Despite having worked at the NYSIF for twenty-eight years in various positions, Plaintiff has not been promoted to a management position. *See id.* at 20-21.

In July of 2013, NYSIF posted a second vacancy notice (E13-04) seeking candidates for

4

the Policyholder Service Manager position in the Binghamton District Office. *See id.* at 21. Plaintiff applied for the position but was not interviewed. *See id.* In August of 2013, Plaintiff was advised by a coworker "that she and others observed information about [his] personal life that was placed in an electronic common retain folder associated with" a fax box, which was used and accessed by the entire staff through NYSIF's email system. *See id.* "Upon information and belief the information was placed in the folder by the male candidate who had interviewed for Vacancy Notice (E13-03) for PHS Manager." *Id.* Moreover, on August 14, 2013, coworkers advised Plaintiff that the same male coworker "was now boasting that he and the Legal Department had intervened and that [Plaintiff] would no longer be the selected candidate for PHS Manager." *Id.* at 22. Plaintiff reported this conduct to the NYSIF Affirmative Action Officer on August 14, 2013 but, after referring the complaint to an outside agency, no action was taken. *See id.* at 22-23.

Plaintiff claims that he is "being subjected to this hostility, sexual orientation sex-based discrimination and retaliation for opposing discrimination and participating in internal NYSIF discrimination complaints and NYS Division of Human Rights investigations." *Id.* at 24. Plaintiff alleges that he filed a workplace violence complaint at NYSIF in May of 2014 after being threatened for pursuing his rights. *See id.* at 25. "Threats and workplace violence [have] continued and include letters and other threatening and derogatory information mailed to [his] home and left in [his] work station including August 2014 and December of 2016 as well as negative interactions, including threats of discipline, harassing letters and negative interactions up through March 2018." *Id.* at 26-27.

Plaintiff claims that his complaints have not been properly acted on. First, he notes that his complaint was transferred to three investigators. *See id.* at 28. Further, Plaintiff claims that the investigators have refused to interview his witnesses. *See id.* at 26. Finally, Plaintiff claims

5

that his complaint was improperly withdrawn just prior to beginning arbitration. *See id.* at 28.

Plaintiff claims that as of March 2018, Defendant Browning continues to have negative interactions with him. *See id.* These interactions include entering Plaintiff's personal space, acting aggressively, slamming doors and items, and conduct which Plaintiff describes as stalking. *See id.* at 28-29.

The proposed third amended complaint includes an October 6, 2017, right to sue letter from the EEOC, a new *pro se* complaint form that makes sex discrimination, hostile work environment, and retaliation claims under Title VII, removes claims against all former defendants except Defendant NYSIF and Defendants Scott Englehart and Charles Browning in their official capacities, and makes some changes to the factual narrative. *See* Dkt. No. 90 at 2. Defendants oppose granting Plaintiff leave to amend his complaint, arguing that Plaintiff's claims are futile. *See* Dkt. No. 100-1 at 3-4.

In Defendants' cross motions to dismiss and for judgment on the pleadings, Defendants argue that Title VII does not permit claims against individuals in their official capacity so the claims against Defendants Browning and Anglehart should be dismissed. *See id.* at 22; Dkt. No. 97 at 2. Further, Defendants argue that Plaintiff fails to allege that he suffered an adverse action or was retaliated against because of his sexual orientation. *See* Dkt. No. 100-1 at 26-31. Finally, Defendants argue that the alleged conduct does not meet the necessary threshold of hostility to establish a Title VII hostile work environment claim. *See id.* at 31-33.

### III. DISCUSSION

**A.      Standard of Review**

*1. Motion to Amend*

According to Rule 15 of the Federal Rules of Civil Procedure, since a responsive pleading has already been filed, "a party may amend its pleading only with the opposing party's written

6

consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. 15(a)(2). In particular, a *pro se* litigant "should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984)). However, leave will only be granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### 2. *Motion for Judgment on the Pleadings and Failure to State a Claim*

In deciding a Rule 12(c) motion, the court "'employ[s] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6).'" *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

**B.    Title VII Claims**

Discrimination claims under Title VII are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). It is the plaintiff's burden to establish a prima facie case of discrimination. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) (citation omitted); *Lewis v. Erie Cnty. Med. Ctr. Corp.*, 907 F. Supp. 2d 336, 346 (W.D.N.Y. 2012) (citation omitted).

*1. Claims Against the Individual Defendants in Their Official Capacities*

It is well established that individuals are not subject to liability under the Title VII. *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (citation omitted). This extends to claims against government officials brought against them in their official capacity. *See Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 360 (S.D.N.Y. 2016). As such, Plaintiff's Title VII claims against Defendants Browning and Anglehart are dismissed.

## 2. Title VII Discrimination

"To establish a prima facie case of . . . discrimination under Title VII . . . , a plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) circumstances surrounding the employment action that give rise to an inference of discrimination." *Fahrenkrug v. Verizon Servs. Corp.*, 652 Fed. Appx. 54, 56 (2d Cir. 2016) (citing *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106-07 (2d Cir. 1989)) (internal footnote omitted); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Once established, a rebuttable presumption of discrimination arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *See Byrnie*, 243 F.3d at 102; *Lewis*, 907 F. Supp. 2d at 346.

But "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Indeed, as concerns the fourth prong, "'a plaintiff need only give plausible support to a minimal inference of discriminatory motivation.'" *Id.* (quotation omitted). Nevertheless, "a discrimination complaint ... must [still] at a minimum assert nonconclusory factual matter sufficient to 'nudge[ ] [its] claims' ... 'across the line from conceivable to plausible' to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quotation omitted). Additionally, "'the elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim.'" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 n.9 (2d Cir. 2015) (quotation omitted).

In order to satisfy the adverse employment action element of a discrimination claim, a plaintiff must show that he endured a "'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted) ("A materially adverse change might be indicated by a termination of employment, a demotion

evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation"). In the discrimination context, the materially adverse action must relate to the terms and conditions of employment, while the "anti-retaliation protection is broader and 'extends beyond workplace-related or employment-related retaliatory acts and harm.'" *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N.*, 548 U.S. at 67).

> "Reprimands and excessive scrutiny of an employee can contribute to a finding that an adverse employment action has taken place. 'However, courts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation.' In other words, being advised and counseled does not, as a matter of law, constitute an adverse employment action."

*Imperato v. Otsego County Sheriff's Dept.*, No. 3:13-cv-1594, 2016 WL 1466545, *16 (N.D.N.Y. Apr. 14, 2016) (quoting *Uddin v. City of New York*, 427 F. Supp. 2d 414, 429 (S.D.N.Y. 2006)) (other quotation and citations omitted). Thus, a complaint must allege more than just the existence of a reprimand to establish an adverse action, it must also allege facts that indicate a demonstrably adverse employment consequence. *See Weng v. Solis*, 960 F. Supp. 2d 239, 248 (D.D.C. 2013); *see also Slinkosky v. Buffalo Sewer Auth.*, No. 97-CV-0677, 2000 WL 914118, *8 (W.D.N.Y. June 29, 2000) (ruling against the plaintiff for failing "to show that the reprimand [letters] affected the compensation, promotion opportunities, or any other term, privilege, or condition of her employment").

Aside from entirely conclusory allegations, Plaintiff's proposed third amended complaint fails to plausibly allege that he suffered an adverse employment action because of his sexual orientation. Plaintiff specifically alleges that he applied for two management positions in 2013 but was not selected for these openings when another candidate emailed "false negative

information" about Plaintiff to supervisors at the NYSIF. Plaintiff does not allege that this email contained information about his alleged sexual orientation; rather, the email discussed the fact that Plaintiff had been disciplined at work for photographing women and that he had been the subject of a domestic violence complaint. These allegations do not support the conclusion that Plaintiff was not promoted because of his sexual orientation.

Plaintiff's remaining allegations do not allege any pecuniary or otherwise tangible harm and, therefore, do not constitute an adverse employment action in the Title VII discrimination context. As such, Defendants' cross-motion for judgment on the pleadings is granted as to Plaintiff's Title VII discrimination claim. For the same reasons, Plaintiff's motion to amend is denied as to his Title VII discrimination claim.

### 3. Title VII Retaliation

Section 704(a) of Title VII makes it unlawful for an employer to retaliate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 48 (2d Cir. 2012). To plead a retaliation claim, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (quotation omitted).

To show an adverse employment action in a retaliation claim, a plaintiff must establish that the alleged "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *See Nixon v. Blumenthal*, 409 Fed. Appx. 391, 392 (2d Cir. 2010). While this threshold is lower than the requirement in a discrimination claim, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often

take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). "'[C]ourts have held that personality conflicts at work that generate antipathy' and 'snubbing by supervisors and co-workers are not actionable.'" *Id.* (quotation omitted).

Here, Plaintiff did not make a complaint regarding discrimination until August 14, 2013, so all allegations that occurred before this date are not causally connected to his complaint. This includes Plaintiff's allegations about not being promoted, which both occurred before August 14, 2013. As to actions taken after August 14, 2013, Plaintiff has not alleged any actions that could constitute a retaliatory adverse employment action.

Plaintiff alleges that the grievance process was defective and improper. Plaintiff notes that his case had been passed to three investigators who refused to interview his witnesses and that his complaint was improperly withdrawn. *See* Dkt. No. 90-1 at 26, 28. However, an ineffective process for investigating a complaint is not, in itself, an adverse employment action. An employer's investigation of a workplace complaint—"without additional particularized facts evidencing a retaliatory intent and resulting in, or amounting to, adverse job consequences for the complainant—cannot sustain a valid retaliation complaint." *Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 146 (2d Cir. 2014). As Plaintiff has not alleged any facts establishing the alleged deficiencies in the investigation process were caused by retaliatory intent or resulted in any adverse job consequences, the alleged deficiencies in the investigation do not constitute an adverse employment action.

Plaintiff also claims that he had negative interactions with Defendant Browning. Again, these allegations do not constitute an adverse employment action. Plaintiff's claims that Defendant Browning slammed doors and objects and was blatantly aggressive are nothing more than allegations of an intra-office personality conflict. As to Plaintiff's stalking allegations

against Defendant Browning, even if such an allegation could constitute an adverse employment action, Plaintiff has only alleged he was stalked in a conclusory manner without providing any specific allegations to support his claim. Plaintiff does not include any allegations about when, where, and how often this "stalking" occurred. Without more specific allegations, the Court is unable to determine whether this alleged conduct was serious harassment, happenstance, or prudent workplace supervision. Given the gravity of this accusation and the complete lack of any supporting factual allegations, the Court finds that this naked assertion is implausible.

Finally, Plaintiff claims that he was subjected to multiple complaints and investigations after making his complaint of discrimination. Other than stating in a conclusory manner that these complaints against him were in retaliation for his complaints, Plaintiff has failed to allege any facts plausibly suggesting a causal connection between his complaints and those made against him. Further, Plaintiff alleges that he that he was the subject of multiple complaints and investigations from well before he filed his complaint. *See* Dkt. No. 90-1 at 10. The fact that Plaintiff was already the subject of multiple complaints, in conjunction with the lack of any factual allegations supporting a causal connection, erodes any plausibility that Plaintiff was subjected to complaints because he engaged in a protected activity. As such, Defendants' cross-motion for judgment on the pleadings is granted as to Plaintiff's Title VII retaliation claim. For the same reasons, Plaintiff's motion to amend is denied as to Plaintiff's Title VII retaliation claim.

### *4. Hostile Work Environment*

"To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive, that is, . . . the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of'" a characteristic protected by Title

VII. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)); *see also Gregory*, 243 F.3d at 692 (indicating that any characteristic protected by Title VII is sufficient to satisfy the third element).

"In order to establish a hostile work environment claim under Title VII, a plaintiff must ... show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). "A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* In assessing the hostility of a work environment, courts examine the "totality of the circumstances." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003). In particular, courts "consider[ ] a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Gorzynski*, 596 F.3d at 102 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

"A plaintiff need not show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Pucino v. Verizon Wireless Commc'ns*, 618 F.3d 112, 119 (2d Cir. 2010). In order to be considered pervasive, a plaintiff must show "that the incidents were 'sufficiently continuous and concerted.'" *Brennan v. Metro. Opera Assoc.*, 192 F.3d 310, 318 (2d Cir. 1999) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Robinson v. Purcell Const. Corp.*, 859 F. Supp. 2d 245, 255 (N.D.N.Y. 2012) (finding five "crude and offensive" gender-based comments were "neither

pervasive nor severe"). The "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not objectively severe enough to establish a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). However, a single incident—if it is sufficiently severe—can create a hostile work environment if it transforms the plaintiff's workplace. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

The Second Circuit has noted that "the mere presence of pornography in a workplace can alter the 'status' of women therein and is relevant to assessing the objective hostility of the environment." *Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007). As such, "many courts have rejected motions to dismiss hostile work environment claims when the plaintiff claimed that the defendant sent graphic sexual imagery to the plaintiff or displayed it in the workplace." *Rice v. Smithtown Volkswagen*, ___ F. Supp. 3d ___, 2018 WL 3848923, *8 (E.D.N.Y. Aug. 13, 2018) (citing *Patane*, 508 F.3d at 114; *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 306 (E.D.N.Y. 2016); *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 326 (N.D.N.Y. 2013)). Given the recent change in law recognizing sexual orientation discrimination as a basis for a Title VII claim, *see Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 132 (2d Cir. 2018) (en banc), the reasoning of *Patane* with regards to pornography and women is applicable in this situation.

Here, Plaintiff has alleged that he received unwanted emails that contained "sexual pictures of men" and "derogatory . . . representations of gay men and sex." *See* Dkt. No. 90-1 at 9. One of the emails that Plaintiff alleged with specificity, the image captioned "NO AIDS," is particularly troubling. The image is both lewd and hostile to Plaintiff's identity at the same time.

Plaintiff also alleges to have been sent images of "fully or partially nude men." *Id.* On one occasion, Plaintiff alleges that he opened an email that was supposed to contain work material in front of a colleague. Instead of work material, however, "a nude male graphic appeared on the

15

screen and related audio began playing." *Id.* at 9. As a result of this incident, Plaintiff claims that he felt degraded, humiliated, and fearful for his job. *See id.* at 10. It is plausible that such an incident could permanently alter Plaintiff's status in the workplace.

Defendants argue that these allegations do not rise to the pervasive severity required to establish a hostile work environment claim. *See* Dkt. No. 100-1 at 32. Defendants cite to multiple cases where the allegations did not satisfy the hostile work environment severe or pervasive requirement. *See id.* at 32-33. Of these cases, however, only one, *Dotson v. City of Syracuse*, No. 5:04-CV-1388, 2009 WL 2176127 (N.D.N.Y. July 21, 2009), involved pornography in the work place.

In *Dotson*, the court granted the defendants' motion for summary judgment after determining that the "incidents were infrequent and isolated." *Id.* at *15. The court noted that there were only two incidents where the plaintiff was subjected to pornography. *Id.* The first incident involved pornography that was not directed towards the plaintiff or displayed publicly— "the plaintiff had to physically walk behind [her coworker] to observe what he was viewing." *Id.* The second incident, which did involve a public viewing of pornography, was not directed towards the plaintiff. *See id.* Given the limited amount that the pornography was displayed and the lack of evidence that these incidents interfered with the plaintiff's work performance, the court held that no reasonable factfinder could conclude that these events were sufficiently "severe or pervasive" to constitute a hostile work environment claim. *Id.*

Here, the facts are sufficiently distinct from *Dotson* as to make it inapplicable. First, although Plaintiff does not specifically allege how many emails he was sent containing obscene images, Plaintiff is proceeding *pro se* and entitled to special solicitude. Moreover, the complaint suggests that these events occurred more frequently and the examples provided were merely demonstrative. Second, unlike the events described in *Dotson*, the obscene materials in this case

16

were sent directly to Plaintiff. Instead of having incidental contact with the pornography, Plaintiff was the intended recipient and targeted because of his sexual orientation. This makes it a qualitatively different situation from *Dotson*. Third, *Dotson* involved a motion for summary judgment whereas the pending motions in the present matter must be decided solely upon the pleadings. Finally, the court in *Dotson* granted summary judgment not because the events were categorically insufficient to give rise to a hostile work environment, but because the events did not appear to effect the plaintiff's work performance and the plaintiff failed to provide any evidence to the contrary. Here, however, Plaintiff has alleged that he was humiliated by these actions and alleges that it left him fearful for his job. That allegation, in concert with the fact that Plaintiff alleges he was repeatedly sent obscene images, is sufficient to state a claim. As such, the Court finds that Plaintiff has properly stated a Title VII hostile work environment claim.

Because the proposed third amended complaint has properly stated a hostile work environment claim, allowing Plaintiff leave to amend would not be futile. Thus, Plaintiff's motion for leave to amend his complaint is granted as to his Title VII hostile work environment claim.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for leave to amend his complaint (Dkt. No. 90) is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Defendant Browning's motion to dismiss (Dkt. No. 97) is **GRANTED**; and the Court further

**ORDERS** that Defendants NYSIF and Anglehart's cross motion for judgment on the

17

pleadings (Dkt. No. 100) is **GRANTED in part** and **DENIED in part**;[1] and the Court further

    **ORDERS** that Defendants Browning and Anglehart are terminated as parties; and the Court further

    **ORDERS** that the Clerk of the Court shall accept for filing Plaintiff's amended complaint, which is now the operative pleading; and the Court further

    **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 9, 2018
       Albany, New York

                                    Mae A. D'Agostino
                                    U.S. District Judge

---

[1] Judgment on the pleadings is granted as to all claims except as to Plaintiff's Title VII hostile work environment claim.