**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**ROBERT A. DOLLINGER,**

                              **Plaintiff,**

   vs.                                              **3:14-CV-00908
(MAD/ML)**

**NEW YORK STATE INSURANCE FUND,**

                              **Defendants.**

---

**APPEARANCES:**                           **OF COUNSEL:**

**ROBERT A. DOLLINGER**
P.O. Box 270
Kirkwood, New York 13795
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**       **HELENA LYNCH, AAG**
**STATE ATTORNEY GENERAL**     **OMAR J. SIDDIQI, AAG**
The Capitol                                    **ADRIENNE J. KERWIN, AAG**
Albany, New York 12224
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

*Pro se* Plaintiff Robert A. Dollinger ("Plaintiff") brought this action against his employer, the New York State Insurance Fund ("NYSIF"), alleging discrimination, retaliation, and hostile work environment based on his sexual orientation and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). *See* Dkt. No. 1. On March 30, 2015, the Court dismissed Plaintiff's Title VII claims for discrimination, retaliation, and hostile work environment because, at that time, the Second Circuit

did not recognize sexual orientation as a protected class under Title VII. *See* Dkt. No. 10 at 10, 15, 19-20.

On August 26, 2015, Plaintiff filed a second amended complaint. *See* Dkt. No. 27. On March 25, 2016, Defendant moved for judgment on the pleadings, seeking to dismiss the second amended complaint. *See* Dkt. No. 47. On November 18, 2016, the Court granted Defendant's motion, denied Plaintiff leave to amend, and entered judgment in Defendant's favor. *See* Dkt. No. 68.

On December 1, 2016, Plaintiff appealed the Court's decision to the Second Circuit. *See* Dkt. Nos. 71-76. While Plaintiff's appeal was pending, the Second Circuit issued a decision in *Zarda v. Altitude Express, Inc.*, 883 F.3d 100 (2d Cir. 2018) (*en banc*), in which the Circuit held, for the first time, that Title VII prohibits discrimination on the basis of sexual orientation. *See Zarda*, 883 F.3d at 132.[1] Upon issuing its decision in *Zarda*, the Second Circuit remanded Plaintiff's case to this Court to "give further consideration on the Title VII claims of sex-based discrimination that Dollinger raised in his original complaint." Dkt. No. 78 at 4. The panel also instructed the Court to give "further consideration of Dollinger's motion [for leave to amend] in conjunction with his allegation of sex-based discrimination, hostile work environment, and retaliation under Title VII." *Id*. at 5.

On May 4, 2018, Plaintiff filed a motion for leave to amend his complaint in order to include Title VII claims. *See* Dkt. No. 90. Defendant opposed that motion and filed a cross motion for judgment on the pleadings. *See* Dkt. No. 100. On October 9, 2018, the Court granted Plaintiff's motion for leave to amend, while granting in part and denying in part Defendant's

---

[1] On April 22, 2019, the Supreme Court granted defendant Altitude Express, Inc.'s petition for writ of *certiorari*. *See Altitude Express, Inc. v. Zarda*, 139 S. Ct. 1599 (2019). The case is currently set for oral argument on October 8, 2019.

motion for judgment on the pleadings. *See* Dkt. No. 103. As a result of the Court's October 9, 2018 Memorandum-Decision and Order, Plaintiff's Title VII hostile work environment claim is the only remaining cause of action.

Currently before the Court is Defendant's motion for summary judgment.

## II. BACKGROUND

**A.     Local Rule 7.1(a)(3)**

Local Rule 7.1(a)(3) requires a party opposing a motion of summary judgment to file a response "admitting and/or denying each of the movant's assertions" in the movant's Statement of Material Facts, and "[e]ach denial shall set forth a specific citation to the record where the factual issue arises." N.D.N.Y.L.R. 7.1(a)(3). Where the opposing party fails to follow Local Rule 7.1(a)(3), the Court shall accept the properly supported facts stated in the movant's Statement of Material Facts. *See id.* ("The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert") (emphasis in original). While this Court must construe a *pro se* litigant's pleadings and papers liberally, and interpret them to raise the strongest arguments that they suggest, this standard "does not excuse a pro se litigant from following the procedural formalities of summary judgment," including Local Rule 7.1(a)(3). *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (citations omitted). "The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions." *Id*. (citations omitted).

In the present matter, Plaintiff failed to submit numbered responses to Defendant's Statement of Material Facts, and also failed to set forth specific citations to the record supporting his denials. *See* Dkt. No. 117. Instead, Plaintiff submitted a six-page memorandum of law, along with 241 pages of exhibits, most of which are not relevant to his remaining claim. Accordingly,

3

the properly supported facts set forth in Defendant's "Local Rule 7.1 Statement in Support of Defendant's Motion for Summary Judgment" are deemed admitted for purposes of this motion. *See* N.D.N.Y.L.R. 7.1(a)(3).

**B.     Background**

Plaintiff is an employee of the NYSIF and works out of their Binghamton, New York office. *See* Dkt. No. 111-1 at 5. Plaintiff first filed a complaint with the Equal Employment Opportunity Commission in 2014 ("EEOC"). *See id.* at 10.

*1. Allegations Relating to Incidents in 2008 to 2010*

Plaintiff alleges a series of incidents occurring between 2008-2010. *See id.* at 5. Plaintiff testified at his November 4, 2015, deposition that "a figure popped up on my screen that said 'No AIDS' at the bottom of it . . . [depicting] figurative people engaged in . . . sex acts with a line through it." Dkt. No. 111-8 at 11. Plaintiff testified that he did not know who had sent this image. *See id.* Plaintiff also testified that "a placard left on his desk" sometime in 2008 or 2009 contained the same image. *See id.* Plaintiff further testified that he received an email in 2009 or 2010 with "a picture of a male dressed in women's clothing, that at the bottom of it says 'Gay Terrorist.'" *Id.* at 13; *see also* Dkt. No. 112 at ¶¶ 10-12. Plaintiff testified that this same image was also left on his desk, also in either 2009 or 2010. *See id.* at 16. Plaintiff also alleges that an image of "fully nude men . . . came on [his computer screen] when [he] was working" in 2009. *Id.* at 14.

Plaintiff first filed a complaint with NYSIF's Affirmative Action bureau in October 2013, alleging sexual orientation discrimination. *See* Dkt. No. 112 at ¶ 17. This original complaint did not mention any of the now-alleged offensive or sexually suggestive images. *See id.* at ¶¶ 18-19. Rather, this discrimination/harassment complaint was against co-worker Mark Gallo and alleged

4

that Plaintiff was "'being harassed, stalked, and threatened by Mark Gallo and others,' including 'stalking into [Plaintiff's] family affairs including sensitive information regarding minor children.'" *Id*. at ¶ 19.

### *2. Allegations Relating to Incidents in 2013 to 2014*

Plaintiff alleges additional incidents in 2013-2014. Plaintiff claims that he received an allegedly offensive image in the mail at his home in either December 2014 or 2015. *See* Dkt. No. 112 at ¶ 20. The letter was not addressed to Plaintiff, nor was he on the list of people intended to receive a copy. *See id.* The letter in question was from Alyce Siegel and addressed to Karen Johns. *See id.* Plaintiff does not know who sent the letter to him. *See id.*; Dkt. No. 111-8 at 23-25.

Plaintiff further contends that his supervisor, Tina Christiano ("Christiano"), made lewd and sexual statements to him and that she "attempts to discuss [his] personal life and engages in negative idioms and negative stereotype statements and behaviors towards [Plaintiff] personally, as well as gay men and other groups." Dkt. No. 112 at ¶ 24. During his deposition, Plaintiff was asked to describe these allegedly inappropriate statements and answered: "just about gays and gay marriages and trying to—when we're talking about—back when she did communicate to me, she would try to engage me in conversations relating to that." Dkt. No. 111-8 at 6. When asked what discriminatory conduct Christiano had perpetrated against Plaintiff, he responded that she had rated him "unsatisfactory" on a performance review in October 2015. *Id.* at 17.

Plaintiff further testified that Christiano "openly made inappropriate comments to me about my sexuality and gays and gay marriage in general," but did not identify any of those specific alleged comments. *Id.* When asked to provide all examples of hostility and animosity to which he was subjected at work, Plaintiff testified that "Christiano, my direct supervisor,

5

constantly alleges that anything that I do is wrong. She doesn't communicate with me effectively. I think that's animosity." *Id*. at 3. He further testified that in March 2014, "Christiano abruptly and aggressively cut me off to the point where we almost collided," and that "[Christiano] was very aggressive and hostile towards me on that day." Dkt. No. 111-8 at 4. Plaintiff further testified that Christiano allegedly slammed a door and "that she would make aggressive faces and kind of try and tower over [Plaintiff]." *Id*. at 21, 28.

### III. DISCUSSION

**A.      Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York.*, 322

F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan*, 289 F. Supp. 2d at 295 (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has directed that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (N.D.N.Y. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment." *Id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, *1 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.     Timeliness of Plaintiff's Hostile Work Environment Claim**

Prior to bringing a Title VII claim in a New York federal court, the aggrieved individual must file a complaint with the EEOC within 300 days of the events or occurrences giving rise to the claim of discrimination. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104-05 (2002); *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003). Consequently, those claims that fall outside of this 300-day time period are deemed time-barred and must be dismissed. *See Morgan*, 536 U.S. at 109. Furthermore, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts

7

alleged in timely filed charges." *Id.* at 113. However, in a Title VII action alleging a hostile work environment, where at least one of the alleged acts of discrimination falls within the statutory period, the court may apply the continuing violation doctrine, wherein the court will find that those discrete claims that would ordinarily be time-barred are sufficiently related to an overall unlawful employment practice or policy and thus will be considered. *See Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) ("To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in the furtherance of the ongoing policy occurred within the limitations period") (citing *Cornwell v. Robinson*, 23 F.3d 694, 703-04 (2d Cir. 1994)); *see also Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993).

Where the continuing violation doctrine applies, the court is permitted to consider "the entire time period of hostile work environment . . . for the purposes of determining liability." *Patterson*, 375 F.3d at 220 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Where the claim that is brought is one alleging a hostile work environment resulting from sexual harassment, in order for the doctrine to apply, it must be shown that, "while a harassing incident need not be overtly sex-based, there must be reason to believe that the act was motivated by the plaintiff's sex in order for the incident to contribute to a sexually hostile work environment." *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 Fed. Appx. 88, 92 (2d Cir. 2014) (citing *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002)).

> A continuing violation may not be premised on discrete incidents of discrimination that are not related to discriminatory policies or mechanisms. Thus, completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a "continuing ' nature. Nor can a continuing violation be established merely because the claimant continues to feel the effects of a time-barred discriminatory act or merely because the claimant continues his or

8

> her employment. Rather the claimant must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy.

*Yang Zhao v. Keuka College*, 264 F. Supp. 3d 482, 493-94 (W.D.N.Y. 2017) (citation omitted). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *overruled on other grounds by Greathouse v. JHS Sec. Inc.*, 784 F.3d 105 (2d Cir. 2015).

In the present matter, as Defendant correctly notes, the Court allowed Plaintiff's hostile work environment claim to proceed based primarily on Plaintiff's allegations that he received "unwanted emails that contained 'sexual pictures of men' and 'derogatory ... representations of gay men and sex.'" Dkt. No. 103 at 15. Further, the Court noted that Plaintiff alleged that he had received emails containing images of "'fully or partially nude men.'" *Id.* In its October 9, 2018 Memorandum-Decision and Order, the Court relied on caselaw effectively treating allegations of pornography in the workplace as categorically unique. *See id.* at 15-16 (citing *Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007)).

As discussed above, with the benefit of discovery, it is now clear that nearly all of the allegations that caused Plaintiff's hostile work environment claim to survive at the pleading stage occurred between 2008 and 2010 and are, therefore, time-barred unless the continuing violation doctrine applies because Plaintiff filed his charge with the EEOC in March of 2014. *See* Dkt. No. 112 at ¶¶ 4-19. Upon review, the Court finds the continuing violation doctrine is inapplicable to Plaintiff's hostile work environment claim relating to his 2013-2014 allegations. Courts have consistently held that when alleged discriminatory acts are committed by different coworkers, in different departments, during different time periods, the continuing violation doctrine is

inapplicable. *See Little v. Nat'l Broadcasting Co., Inc.*, 210 F. Supp. 2d 330, 368 (S.D.N.Y. 2002). Plaintiff's initial complaints in 2008-2010 centered on "co-worker Mark Gallo and others" working at NYSIF at that time. *See* Dkt. No. 111-1 at 7. The anonymous letter Plaintiff received at his home was originally sent from Alyce Siegel to Karen Johns, and Plaintiff was not listed as an intended addressee. *See id*. Further, Plaintiff's supervisor, Christiano, could not have been one of the "others" in the 2008-2010 complaints, as Christiano only began working in the same office as Plaintiff in January 2014. *See id*. at 10.

Further, setting aside the question of whether the alleged hostility shown to Plaintiff is part and parcel of a continuing violation, Plaintiff fails to put forth any evidence, as he must, that Defendant took any specific actions in furtherance of any ongoing discriminatory policy, *see Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004), or any actions "contributing to" a hostile work environment, *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002), within the 300 day window. Although Plaintiff did file a discrimination/harassment complaint against Mark Gallo in October of 2013, that complaint, even liberally construed, does not allege harassment or discrimination because of Plaintiff's sexual orientation. In the October 2013 complaint, Plaintiff checks the box to indicate that he is alleging "Sexual Orientation" discrimination and then provides the alleged discriminatory conduct as follows:

> I believe I am being harassed, stalked, and threatened by Mark Gallo and others. This activity includes, but is not limited to, stalking into my family affairs including sensitive information regarding minor children. I had been advised by investigative authorities that this unsupported information would be sealed. Mark Gallo electronically disseminated this non-work related information.

Dkt. No. 111-5 at 3. No additional explanation is provided as to why Plaintiff believes that this alleged hostile conduct in any way related to his sexual orientation. Further, Plaintiff fails to

10

explain any actions Defendant took in furtherance of any discriminatory policy or actions it took contributing to the hostile work environment. As such, Plaintiff cannot avail himself of the continuing violation doctrine.

Accordingly, the Court finds that these isolated incidents, often separated by months or years, cannot be used to support Plaintiff's hostile work environment claim under Title VII.[2]

**B.  Hostile Work Environment**

A hostile work environment claim under Title VII must include facts indicating that the allegedly hostile conduct "(1) 'is objectively severe or pervasive—that is, . . . the conduct creates an environment that a reasonable person would find hostile or abusive;' (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive;' and (3) 'creates such an environment because of the plaintiff's sex,'" *Patane*, 508 F.3d at 113 (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)), or because of any other characteristic protected by Title VII, s*ee Gregory*, 243 F.3d at 692 (indicating that any characteristic protected by Title VII is sufficient to satisfy the third element).

"In determining whether conduct constitutes a hostile work environment, the Court must consider the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance." *Salmon v. Pliant*, 965 F. Supp. 2d 302, 305 (W.D.N.Y. 2013) (citations omitted). Further, "a few isolated incidents of 'boorish or offensive use of language' are generally insufficient to establish a hostile work environment." *Id.* (citations omitted).

---

[2] The Court acknowledges that Plaintiff has included in his response to Defendant's motion several new allegations that allegedly occurred immediately prior to and after he filed his EEOC complaint. As discussed in more detail below, however, these new allegations are not properly before the Court.

11

*1. New Allegations*

As Defendant notes, Plaintiff makes new allegations in his response to Defendant's motion for summary judgment that were not previously disclosed and that contradict Plaintiff's discovery responses and deposition testimony. As set forth in Defendant's statement of material facts, Plaintiff testified under oath in November of 2015 that the offensive images he alleges he received at work – the same allegations that caused his third amended complaint to survive the motion to dismiss – were all received no later than 2010. *See* Dkt. No. 112 at ¶¶ 5, 7, 12, 14, 16. While Plaintiff could not have testified about any alleged incidents after his November 4, 2015 deposition, he was given an opportunity earlier this year to provide evidence of any alleged incidents that post-dated his deposition. As Plaintiff's Exhibit 46 shows, when asked to identify when he received offensive materials, Plaintiff answered vaguely that he was "unaware of specific dates" and that "some were included in mailings that were received at [his] home including August 2014, December 2015 and December 2016." Dkt. No. 117-2 at 112, 116-17. Plaintiff did not allege that any images were left in his work area during these times. *See id.* at 116-17 (stating images were left at his work area but providing no dates).

For the first time, Plaintiff now alleges that offensive images were left at his work area "through 2017." Dkt. No. 117 at 2. Plaintiff also alleges for the first time that he received "playing cards." *Id.* While Plaintiff's opposition does not cite to a single exhibit, these "playing cards" appear to be Exhibit 8, which he describes as "[n]ude cards left in [his] workstation April of 2017." Dkt. No. 117-1 at 2. In his January 2019 discovery responses, Plaintiff did not respond that "nude cards" – or any images – were left at his workstation in April of 2017. *See* Dkt. No. 117-2 at 112-13, 116-17. Further, Plaintiff has never before alleged anything about "playing

12

cards" or "nude cards." Moreover, as Defendant notes, nothing in the record indicates that Plaintiff made any complaint to Defendant about these purported playing cards.

Plaintiff also now alleges that graphics – those with the "No AIDS" caption and the "gay terrorist" caption – were left in his work area and emailed to him in March 2014, August 2014, and January 2016. *See* Dkt. No. 117-1 at 2. At his deposition in November of 2015, Plaintiff testified that the image with the "No AIDS" caption was left in his work area in 2008 or 2009, *see* Dkt. No. 112 at ¶¶ 5-7, and that the image with the "gay terrorist" caption was left in his work area in 2009 or 2010. *See id.* at ¶¶ 13-14. In his January 2019 interrogatory responses, Plaintiff did not claim that either of these images was left at his work station on any other date than those he testified to at his deposition, although he does claim that he received several of these images at his home in August 2014, December 2015, and December 2016. *See* Dkt. No. 117-2 at 116-17.[3]

"[W]hile special solicitude permits a pro se plaintiff to effectively amend the allegations of his complaint while responding to a motion to dismiss for failure to state a claim (which, typically, comes relatively early in an action), it does not permit him to do so while responding to a motion for summary judgment (which, typically, comes relatively late in an action, for example, where, as here, after the defendants have completed discovery based on the allegations contained in the plaintiff's complaint)." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 492 (N.D.N.Y. 2009) (footnotes omitted). Simply stated, the net effect of permitting Plaintiff to so change the landscape of his claims at this late stage of the action would be to deprive Defendant of the fair notice envisioned by the Federal Rules of Civil Procedure.

---

[3] The Court also notes that, not only did Plaintiff fail to mention these new incidents at his deposition, none of these new allegations were included in Plaintiff's third amended complaint, which was filed on October 9, 2018. *See* Dkt. No. 104.

Moreover, with one exception, nothing in the record indicates that Plaintiff alerted Defendant to these new allegations. Based on the record before the Court, the only of these alleged incidents that was reported to Defendant appears to be the anonymous letter sent to Plaintiff's home postmarked August 28, 2014, which referenced this litigation and Plaintiff's proposed amended complaint. *See* Dkt. No. 117-1 at 28-33.

As mentioned above, even when a plaintiff establishes that he has been subjected to a hostile work environment, he must also establish that a specific basis exists for imputing the objectionable conduct to his employer. *See Fairbrother v. Morrison*, 412 F.3d 39, 48-49 (2d Cir. 2005), *abrogated on other grounds by Kessler v. Westchester Cty. Dept. of Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006). "Where an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Id.*; *see also Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) ("[E]mployer liability for a hostile environment created by coworkers, or by a low-level supervisor who does not rely on his supervisory authority in carrying out the harassment, attaches only when the employer has either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it") (quotation omitted).

According to two 1998 Supreme Court cases, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), this inquiry differs where the harassment is attributed not to non-supervisory co-workers but to a supervisor with immediate or successively higher authority over the employee. *See Ellereth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

> In that circumstance, "a court looks first to whether the supervisor's behavior culminated in a tangible employment action against the employee." ... If it did, "the employer will, *ipso facto*, be vicariously liable." ... If no such tangible employment action is present, however, an employer will still be liable for a hostile work environment created by a supervisor unless the employer successfully establishes an affirmative defense.... That defense requires the employer to show that (a) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (b) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

*Fairbrother*, 412 F.3d at 49 (internal quotations and citations omitted).

In the present matter, it is undisputed that Defendant had policies in place to address complaints of discrimination and harassment, which Plaintiff had frequently taken advantage of in years past. *See* Dkt. No. 117-1 at Exhs. 6, 14, 17, 20, 21, 25; Dkt. No. 117-2 at Exhs. 26, 33. Moreover, the alleged hostility was all perpetrated by co-workers or low-level supervisors who were not relying on their supervisory authority in carrying out the harassment. Even if Plaintiff's new allegations were properly before the Court, nothing in the record supports the inference that Defendant was aware of these incidents and Defendant provided a reasonable avenue of complaint that Plaintiff had frequently taken advantage of in the past. Where such policies are in place and an employee fails to avail himself of them, alleged discriminatory conduct cannot be imputed to the employer. Finally, even assuming that the hostility was perpetrated by a supervisor, Plaintiff has not established that he suffered a tangible employment action and Defendant has demonstrated that it exercised reasonable care to prevent and correct sexually harassing behavior and Plaintiff unreasonably failed to take advantage of the corrective or preventative opportunities Defendant provided. *See Sardina v. United Parcel Service, Inc.*, 254 Fed. Appx. 108, 110 (2d Cir. 2007) (citation omitted).

In sum, Plaintiff cannot create an issue of fact by submitting vague, confusing, and contradictory claims, or by submitting claims that have never before appeared in this litigation and that he failed to disclose during discovery. *See Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) ("The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony") (citations omitted); *see also Hay v. Burns Cascade Co., Inc.*, No. 06-cv-0137, 2009 WL 414117, *6 (N.D.N.Y. Feb. 18, 2009) ("If a party, who has been examined at length on deposition, could raise an issue of fact simply by submitting an affidavit that, by omission or addition, contradicted his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact") (citing *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). As such, these new allegations will not be considered by the Court is determining whether an issue of fact exists as to Plaintiff's hostile work environment claim.[4]

### 2. Remaining Allegations

Turning to the remaining incidents that are not time barred and are properly before the Court, it is clear that Plaintiff has failed to put forth sufficient evidence that would permit a rational jury to find that he was subjected to a hostile work environment because of his sexual orientation. In response to Defendant's motion, Plaintiff appears to allege that a workplace violence complaint filed against him by attorney Charles Browning constituted harassment based on sexual orientation. *See* Dkt. No. 117-1 at 7-15. In his September 1, 2015 workplace violence

---

[4] As discussed, even assuming that these new allegations were properly before the Court, they would still not support Plaintiff's claim because Plaintiff failed to avail himself of Defendant's available policies and procedures to address alleged workplace harassment and discrimination.

complaint and attached letter, Browning details why he believes Plaintiff poses a threat to all employees at the Binghamton office and recommends that he be suspended until such time as he has completed a mental health examination. *See id.* Browning makes mention of this lawsuit and Plaintiff's proposed amended complaint, which he claims is devoid of any specific allegations against any employees and characterizes as "little more than a hysterical rant against perceived enemies[.]" *Id.* at 11. The complaint goes on to mention that the perceived problems that Plaintiff now complains of have followed Plaintiff throughout his twenty-eight years with the NYSIF and that he was previously transferred from the White Plains office to the Syracuse office because of similar problems. *See id.* at 12. The seemingly biggest issue that Plaintiff has with this complaint is comparisons made to several mass murderers. *See id.* In his complaint, Browning stated the following:

> A fair reading of Dollinger's PAC reveals that it is similar in nature
> to the manifestoes left by the mass murderers in the shootings at
> Columbine in 1999, Virginia Tech in 2007, Aurora, CO in 2012,
> Isla Vista, CA in 2014, Charleston, SC in 2015, and near Roanoke,
> VA on August 26, 2015. They all share the same rambling
> recitation of negative social interactions and blocked goals as the
> primary motive for their authors' actions.

*Id.* Finally, the complaint makes mention of a domestic violence incident for which Plaintiff was arrested and concludes that Plaintiff is no stranger to physical violence and that he has no qualms about making patently false allegations under oath, or he simply "no longer knows the truth from his own fictionalized version of events. Dollinger's conduct has all [the] earmarks of the co-worker who arrives at work with a gun bent on doing as much harm to as many of his perceived aggressors and wrongdoers as possible." *Id.* at 13-14.

In his response, Plaintiff claims that Browning's complaint "likens me to alleged homosexual murderers." Dkt. No. 117 at 2. Notably absent from Browning's complaint,

17

however, is any mention of the word "homosexual" or even a reference to Plaintiff's sexual orientation. Rather, Browning's complaint simply sets forth his belief that, based on Plaintiff's perceived behavior, he is a threat to those he works with. Nothing in the complaint would lead a rational juror to believe that it was filed because of Plaintiff's sexual orientation.

Plaintiff also relies on the August 28, 2014 letter he received at his home. *See* Dkt. No. 117 at 2. Again, however, this letter makes no reference to Plaintiff's sexual orientation. *See* Dkt. No. 117-1 at 29-30. Rather, the letter makes reference to this action, claiming that it is providing the unidentified senders with "hours of entertainment and comedic relief!" *Id.* at 29. It further accuses Plaintiff of making up lies about his co-workers. *See id.* The letter concludes with the following lines: "Know this: we're on to this game of yours and 'public records' are 'public' and will be read – others have the right to sue too!" *Id.* at 30. While this letter is troubling and again demonstrates the unbelievably acrimonious relationship that Plaintiff shares with some of his co-workers, it does not support the inference that Plaintiff has been subjected to a hostile work environment because of his sexual orientation.

Plaintiff is also attempting to rely on an October 2014 discrimination/harassment complaint that Plaintiff caused to be filed on behalf of female co-workers. *See* Dkt. No. 117-1 at 35-37. In this complaint, Plaintiff claims that employee Kim Renko made "inappropriate comments" that "relate to perceived sexual orientation of the females and targeted aggression and retaliation toward same including unethical filing and processing of complaints." *Id.* at 35. These unspecified comments, made to unknown persons, regarding the perceived sexual orientation of unidentified female co-workers, fall far short of demonstrating that Plaintiff was subjected to a hostile work environment because of his sexual orientation.

Finally, Plaintiff also relies on his interactions with Tina Christiano in support of this claim. These interactions included various "inappropriate things" she said to him and her general hostile demeanor towards him. At his deposition, when asked to describe the "inappropriate things" Christiano said to him, Plaintiff testified as follows: "Just about gays and gay marriages and trying to – when we're talking about – back when she did communicate with me, she would try to engage me in conversations relating to that." Dkt. No. 111-8 at 6-7. Plaintiff further testified that, in October of 2014, Christiano "slammed the door on [him] when [he] walked into her office one day." *Id.* at 21. When asked if Christiano had been physically threatening towards Plaintiff in any other way, Plaintiff responded that "she hasn't communicated with me in a long time, but when I was physically present in the room, she would like, make aggressive faces and kind of try and tower over me." *Id.* Aside from making "her eyes ... bulge," Plaintiff was unable to recall any other physically threatening behavior that Christiano engaged in. *See id.* at 21-22. Plaintiff also claims that Christiano has berated him in front of colleagues and has been critical of his work. When asked to provide specific examples of this behavior, Plaintiff testified as follows: "She alleged that I didn't document something properly, and that a judge had taken exception to it in a court case that was handled by Charlie Browning." *Id.* at 19. Plaintiff was unable to recall any other specific incidents where he was "berated" by Christiano, despite claiming that it has occurred on multiple incidents.

Again, these allegations fall far short of demonstrating the severe and pervasive conduct necessary to support a hostile work environment claim. Moreover, aside to the single reference in his deposition to attempting to engage Plaintiff in conversation about "gays and gay marriage," nothing supports the inference that any of the alleged hostility was because of Plaintiff's sexual orientation. Further, while the unspecified comments may have been unrefined or uncivil, they

19

were not alleged to have been obscene or lewd and, therefore, do not support Plaintiff's claim. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010).

In sum, what is clear from the record is that, over the course of many years, Plaintiff has had an acrimonious relationship with a number of his coworkers. What the record fails to support, however, is that this acrimonious relationship had anything to do with Plaintiff's sexual orientation or that it was sufficiently severe and pervasive to support his claim. Even though many of the allegations that fall within the 300 day window could be deemed as unrefined or uncivil, Title VII simply "'does not set forth a general civility code for the American workplace.'" *McGullam*, 609 F.3d at 76 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). Accordingly, the Court grants Defendant's motion for summary judgment.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 111) is **GRANTED** and Plaintiff's third amended complaint is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 26, 2019
       Albany, New York

Mae A. D'Agostino
U.S. District Judge